PANG SHO YIN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 18, 1907.)

No. 1,668.

ALIENS—DEPORTATION OF CHINESE—EVIDENCE OF NATIVITY.

Evidence considered, and *held* sufficient to entitle a Chinese person arrested for being unlawfully within the United States to his discharge on the ground that he was a citizen of the United States by birth; there being direct testimony of apparently credible witnesses to such fact, and no evidence to the contrary, except a statement made by defendant to the inspectors who arrested him, which, although somewhat inconsistent with such claim, was not irreconcilable therewith.

Appeal from the District Court of the United States for the Eastern District of Michigan.

B. F. Graziani, for appellant.

James V. D. Willcox, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an appeal from an order of the District Court adjudging the appellant to be a Chinese person unlawfully within the United States and ordering his deportation to China. He was seized by two customs inspectors on the night of June 30, July 1, 1906, at the village of Ecorse, nine miles south of

Detroit and taken to the jail at Detroit. On July 2d he was brought before one of these officers and was sworn and examined by the latter through the medium of a Chinese interpreter employed by the government, and the other inspector, acting as stenographer, took down the statement. On July 5th a warrant was issued by a United States commissioner on the complaint of one of the inspectors, and the respondent was taken before the commissioner, where he pleaded not guilty. His defense was that he was born in San Francisco, Cal., and was therefore a citizen of the United States. The hearing was adjourned from time to time until November 19th, when the commissioner adjudged that the respondent was a Chinese person, and was guilty of being unlawfully within the United States, and entered an order for his deportation. The respondent appealed to the District Court, where the commissioner's order was affirmed.

The decisive question in' the case is whether the appellant was born in this country of parents having a domicile here. If he was, his expulsion would deprive him of a constitutional right of citizenship.

The order of the commissioner, so far as it involved the question of the respondent's citizenship, was based entirely on the inspector's examination of the respondent above mentioned and the answers of the respondent to the questions put to him on said examination; and the testimony of the inspectors that at the time they seized the respondent at Ecorse he was coming from the direction of the Detroit river, in company with three other persons, one of whom was a Chinese person, and the other two white men. The interpreter, who was himself a Chinese person, testified that the respondent seemed to understand the Chinese language, and that from his general appearance, his complexion, and the manner of wearing his queue, he judged him to belong to that nationality. And it may be here said that the proof was sufficient to support the finding that the respondent was a Chinese person. Counsel for the appellant comment upon the use made by the government of the inspector's examination of the respondent below; that it was made when he had no counsel, and without warning to the respondent of the use which might be made of it, and by persons whose sole object was to convict him. There is at the head of the examination a statement that the respondent was given warning, but no witness swears to it, and there is no certificate to that effect. This is simply the unsworn ex parte statement of the stenographer. While the question is not raised in such a way as to require a ruling upon it, we feel bound to say that the unsatisfactory character of testimony so procured as the basis of an adjudication against the respondent is a factor which we take into account in reaching our conclusion.

In the inspector's examination, the respondent stated that he was 31 years old; that he was born in San Francisco; that his father's name was San Foy, and his father died when the respondent was quite young; that he went to China when he was four years old; that he had lived there until his recent return to this country; that his occupation there was farming; that when he returned he landed in Vancouver, British Columbia, and paid a head tax there of $500; that he had been in various parts of Canada; that he left Windsor at 10 o'clock the evening before his arrest by the inspectors and came across the Detroit river

in company with the other three persons mentioned by the inspectors; and that he was then on his way to Paducah, Ky., where he had a relative. This account might fairly excite suspicion, but it was not irreconcilable with the supposition that on his return to America he had no clear ground for expecting that he could prove his birth in the United States and establish his identity and right to entrance here, and that he did not intend to rely upon the fact of his birth in the United States. But several persons have been found and produced as witnesses whose veracity is vouched for by their neighbors, who swear to the circumstances of his nativity in San Francisco and his going to China when quite young, all as stated by him. One of these states the name of the street in San Francisco where the father lived and the respondent was born, and the month and year of the event, and he then knew the father and son; that he (the witness) afterwards saw the respondent in China when the latter was 10 years old, and now recognizes him as the same person. The identification of the appellant by the witness as the child of their acquaintance in San Francisco is so positive that we cannot feel justified in disregarding it when the consequences are so serious as the possible (and we think probable) expulsion from his native country of one who is entitled to share the birthright of citizenship.

We think the judgment and order of the District Court should be reversed, and the appellant discharged.