## UNITED STATES v. CHU KING FOON.

### (District Court, N. D. New York. July 11, 1910.)

1. ALIENS (§ 32*)—CHINESE DEPORTATION PROCEEDINGS—WITNESSES—CREDIBILITY.

    The commissioner in a Chinese deportation proceeding need not believe a Chinese witness, when he sees him and has opportunity to judge of his credibility.

    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—CHINESE DEPORTATION PROCEEDINGS—EVIDENCE—SUFFICIENCY.

    Evidence *held* to sustain a finding that defendant in a Chinese deportation proceeding was not born in the United States.

    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Appeal from Decision of Commissioner.

From an order of deportation by Commissioner Wellington, Chu King Foon appeals. Affirmed.

Thomas F. Phelan and Lewis E. Griffith, for appellant.

H. E. Owen, Asst. U. S. Atty.

RAY, District Judge. This appeal and the record presents the single question: Was the evidence such that the commissioner ought to have been satisfied that Chu King Foon was born in the United States?

The commissioner has the witnesses before him, and notes their appearance, apparent candor, etc., and is far better able to judge of their truthfulness than any appellate tribunal, not seeing the witnesses, can be. The Supreme Court has decided that in these cases the appellant is entitled to a hearing de novo before the judge, if he desires and demands it. Here the appellant has elected to submit the case on the record made before the commissioner.

Chu Tick, a Chinese person, testified that he knew Jew Hing Lee and Li She, and that they were husband and wife, and lived in San Francisco, Cal., and that the appellant, Chu King Foon, is their son; that the alleged parents were married in 1890, and that he attended the christening feast of defendant, given by the parents; that the father was a tailor at 733 Washington street, and that he saw the defendant in his father's shop substantially every week; that he came east with defendant shortly after the earthquake in 1906; also that he saw defendant frequently in New York for the two months after coming east. He also says he is positive the defendant has always lived in this country.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Chu Len, a Chinese person, says he was present at defendant's christening, and knew him about two years, and next saw him about 10 or 12 years thereafter, and that he was then living with his parents, and next saw him in New York. He says defendant is 21 or 22 years old.

Chu King Foon, defendant, was sworn, and says he was born on Washington street, San Francisco, was never out of the United States, and that he came to New York City, and was there 11 or 12 years, and then went to Cohoes and Waterford. He claims he had a certificate of birth given him by his father, but that his store was robbed and this taken from him. He was also asked as to a conversation with Mr. Wiley, a Chinese inspector, and denied the substantial part of his testimony.

It was conceded that Rev. Mr. Armstrong and three women, if sworn, would testify to the good character and truth and veracity of defendant.

Inspector Wiley was not called by the United States, but it was conceded that, if called, he would testify that defendant made certain statements under oath, when questioned, to which attention will be called; that he made the statements through an interpreter, who, if called, would testify that he interpreted correctly. The substance of defendant's statement to Wiley was that he was 31 years old, first came to the United States when 15 years of age, entered at San Francisco, was born in San Francisco, but had forgotten where, and did not remember where he lived for the 15 years he was in that city; that when about 15 he went to China and remained a year, and then returned to the United States and came to New York; also that defendant said his father's name was Chu Ngoon May, but that he was dead, and that his mother's name was Lum She, and that she was and is living in China; also that one Chu Hong Mow, a cousin, knew of his birth, and also Chu Sum, living in New York; also that he had three brothers, two in China and one in the United States, Chu King Fong; also that his father never returned to the United States after taking him to China.

The evidence before the commissioner, given by the witnesses named, was that the alleged father and mother of defendant had no other children. If defendant made this statement to Inspector Wiley, which he reduced to writing, and it is conceded that Wiley and the interpreter would swear he made it, then the evidence of defendant given before the commissioner was undoubtedly untrue, and that of Chu Tick and Chu Len a fabrication, or a case of mistaken identity.

Inconsistent and contradictory statements made out of court, or in court at other times, and under oath, if material, and on substantial points within the knowledge of the witness making them, always tend to discredit the witness. It is, in a way, an impeachment. So the commissioner is not bound to believe a Chinese person in one of these cases, when he sees him and has an opportunity to judge of his truth. The defendant was given a full and a fair hearing. There was no arbitrary action. He was confronted with these statements made to

Inspector Wiley under oath on a former occasion,when he had no interest to falsify, but every interest to tell the truth, if his subsequent testimony before the commissioner was the truth. He denied that he made the statements. This presented a question of fact for the commissioner and for this court.

The commissioner was not satisfied that the defendant was born in the United States, and this court is not. On the other hand, I think he told Wiley the truth, and that Wiley correctly recorded his statements. I cannot discern any motive Wiley had to tell an untruth in the matter. It is not a case of mere discrepancies, but of glaring contradictions, in his statements on vital questions in the case. It is not like United States v. Jhu Why (D. C.) 175 Fed. 630, where the alleged contradictory statements made to the inspector were not very important, and the inspector confessed he might be confused as to the identity of Jhu Why with the one he had in mind as having made the statements. If appellant made the statements to Wiley which it is claimed he did, they are absolutely irreconcilable with the evidence subsequently produced in his behalf, when he and they had strong inducements to manufacture evidence or make untrue statements. Of course, such evidence of contradictory statements is to be carefully scrutinized, and the court should be satisfied they were designedly made.

To reverse the finding of the commissioner in this case would be an arbitrary act, and one in defiance of well-established rules of evidence. If Chinese witnesses, unimpeached, except by their appearance and manner of testifying, are to be believed and their testimony accepted, all Chinese persons desiring to enter the United States will set our exclusion laws at defiance. It is not necessary to comment on this class of testimony. The Supreme Court has held that neither the commissioner nor court is bound to accept it, even when unimpeached by the ordinary methods or contradicted by other witnesses. Here the two witnesses called by defendant were not present at his birth and really could have known but little of him. Their testimony was of a nature impossible for the government to contradict.

I think the commissioner was right, and that the judgment of deportation must be affirmed. So ordered.