## GEE CUE BENG v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit.   February 7, 1911.)

### No. 2,119.

1. **ALIENS (§ 32*)—CHINESE EXCLUSION—REVIEW BY CIRCUIT COURT OF APPEALS.**

     Where a Chinese alien, arrested in deportation proceedings, is ordered deported, and the order is affirmed on an appeal to the District Court, the order is again reviewable on a further appeal to the Circuit Court of Appeals.

     [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. § 32.*]

2. **ALIENS (§ 32*)—CHINESE PERSON—EXCLUSION—CITIZENSHIP—EVIDENCE.**

     In Chinese exclusion proceedings, evidence *held* to require a finding that defendant was a native-born citizen of the United States, and therefore not subject to deportation.

     [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. § 32.*

     Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

3. **ALIENS (§ 32*)—CHINESE EXCLUSION—CITIZENSHIP—BURDEN OF PROOF.**

     Where in Chinese deportation proceedings defendant claims to be a natural-born citizen, never to have left the United States, he was entitled to rely on his constitutional right to remain, and the burden was on the government to prove noncitizenship.

     [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. § 32.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Deportation proceedings by the United States against Gee Cue Beng. From an order of deportation, affirmed by the District Court, defendant appeals. Reversed and remanded, with instructions to discharge.

On April 2, 1910, an affidavit was made by Alfred W. Brough, Chinese inspector, before the United States commissioner, charging the appellant, Gee Cue Beng, to be a Chinese person unlawfully in the United States without a legal certificate, in violation of the Chinese exclusion laws. A warrant was issued and appellant arrested, and furnished recognizance in the sum of $1,500 with a reputable white citizen and freeholder as surety for his appearance before the commissioner. Appellant was tried before the commissioner on the said charge. The note of evidence first shows that a stenographer and then a Chinese interpreter were sworn. Whether the interpreter was called for by the government or by the appellant does not appear. On the trial the government introduced three witnesses, Alfred W. Brough, Chinese commissioner, Gee Fawn, and Gee Ling.

Mr. Brough testified that he had no previous acquaintance with or knowledge of the appellant. He arrested him on Rampart street in the city of New Orleans April 4, 1910; that his occupation at the time was that of a laundryman; that on request for his certificate he claimed he had none, said he was a merchant.

Gee Fawn testified that he did not know where appellant was born, but that he did know that he had been residing in New Orleans for the last 10 years, and that the appellant and Gee Ling were not brothers.

Gee Ling testified as follows: "Q. What is your name? A. Gee Ling. Q. What is your married name? A. Gee Cue Toy. Q. Where were you born? A. Canton, China. Q. Do you know this man here [indicating]? A. No. Q. Never saw him before? A. No; I don't know him. Q. Isn't this man your brother? A. No. Q. Has your father got any brothers? A. No. Q. Have you got any brothers? A. Yes; I have got a big brother in China. Q. What is his name? A. Gee Cue Dep. Q. What other name has he got? A. Gee Loon and Gee Cue Dep. Q. What is your father's name? A. Gee Kit. Q. What is your mother's name? A. Chin See. Q. What village do you come from in China? A. Sen Woo. Q. Has your father ever been in this country? A. No. Q. Has your mother ever been in this country? A. No. Q. Your father and mother never came to this country? A. No. Q. Are they still living? A. No; they are dead. Q. When did they die? A. More than 10 years ago. Q. How old are you? A. I am 45 years. Q. How old is your other brother? A. I don't know how old he is. Q. Do you know a boy by the name of Ah Sim? A. No. Q. Do you know Ah Ha? A. No. Q. Aren't those the children of this man? A. No." Cross-examination: "Q. Is your mother the prisoner's mother? A. No. Q. Is your father the prisoner's father? A. No."

The appellant, Gee Cue Beng, testified in his own behalf that he was born on Virginia street, San Francisco, Cal.; that his father was named "G Gee Kit," and that his mother was "Chin See"; that he was the only child; that his father kept a place of business on Clay street between Commerce and Washington streets, San Francisco, Cal., and resided about two or three blocks away; that his father and mother are both dead; that he himself never left the United States; that he left San Francisco for New Orleans when he was 14 years of age, and has been continuously residing in the city of New Orleans for the last 17 years. If an interpreter was used in taking his evidence, it does not appear at whose request. The appellant was corroborated as to his birth in the United States, as to his age when he left San Francisco, to come to New Orleans, and the death of his father and mother by the evidence of Chue Sing and Gee Pon Son. He was corroborated as to his residence in the city of New Orleans by the evidence of Gee Hing Wo, Jee Bon Poy, and by Edward Boetner, a white man born in Chicago and residing in the city of New Orleans since 1878. These witnesses, some of whom

testified in English, were all cross-examined without eliciting any material contradiction.

The commissioner ordered the appellant to be deported. An appeal was taken to the United States District Court, where, on the evidence taken and reduced to writing before the commissioner, the order of deportation was affirmed.

Chandler C. Luzenberg, for appellant.

W. J. Waguespack, Asst. U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). It seems to be settled that the appellant has a right to this appeal. See United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93; Tsoi Yii v. United States, 129 Fed. 585, 64 C. C. A. 153; United States, Petitioner, 194 U. S. 194, 24 Sup. Ct. 629, 48 L. Ed. 931. And, if this be so, then he has a right to our conscientious judgment on the law and facts.

It must be conceded that on the evidence submitted the appellant establishes by sworn witnesses a strong affirmative case showing that he is a citizen of the United States under the decision of the Supreme Court in United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890. Against the case thus made, there is nothing advanced but suspicion founded on race prejudice, a statement by counsel not borne out by the record that the appellant cannot speak English, and the evidence of Gee Ling, above given, which, it is argued, contradicts the appellant in that Gee Ling's father and mother who never came to America bore the respective names of Gee Kit and Chin See, almost identical with the names of appellant's father and mother, "G Gee Kit" and "Chin See." The inference of brotherhood drawn from the identity of Chinese names is far-fetched in a country where John Smiths and Mary Browns are so common, and, if otherwise good, it should have no place here, for both Gee Fawn and Gee Ling, produced by the government, of course, as credible witnesses, positively deny the relationship.

Counsel for the United States, citing United States v. Chu King Foon (D. C.) 179 Fed. 995, contend that the commissioner need not believe a Chinese witness in a Chinese deportation proceeding when he sees him, and has an opportunity to judge of his credibility. Even if we were disposed to agree with counsel that United States commissioners may disregard evidence in cases where only the liberty of a Chinese person is involved, it would be of no avail here unless we should go further and impute perjury, not only to the appellant, but to some five unimpeached witnesses, including a white citizen, and at least one government witness; and we are not disposed to here indorse such contention.

So far, we have treated this case as one where the burden is on the appellant to prove his exemption from arrest and deportation. See United States v. Hoy Way (D. C.) 156 Fed. 247; Kum Sue v. United States, 179 Fed. 370, 102 C. C. A. 648; Yee King v. United States, 179 Fed. 368, 102 C. C. A. 646. As to this doctrine, however, and in relation to the appellant's claim in this case, we fully concur with the views and reasoning of the Circuit Court of Appeals for the Seventh

184 F.—25

Circuit as expressed in the opinion of Judge Grosscup in Moy Suey v. United States, 147 Fed. 697, 78 C. C. A. 85, and we quote as follows:

"But the government claims that, under section 3 of the deportation act, any Chinese person or person of Chinese descent shall be adjudged to be unlawfully within the United States, unless such person shall establish 'by affirmative proof, to the satisfaction of the judge or commissioner, his lawful right to remain in the United States,' and that this provision in some way nullifies the weight that would otherwise be given to the evidence referred to. Unquestionably Congress has power to exclude from our shores aliens of any birth, including the Chinese; and, having that power, has the power also to prescribe the conditions on which such exclusion shall be exercised. That the conditions prescribed may be hard would in a judicial inquiry be of no moment, for under such circumstances the question is not one of constitutional right, but of national policy. Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; The Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721. But when a person physically and politically present in the United States at the time he is arrested for deportation claims that he is an American-born citizen, and resists deportation on the basis of his rights of citizenship, the case is an entirely different one. Nativity gives citizenship, and is a right under the Constitution. It is a right that Congress would be without constitutional power to curtail or give away. It is a right to be adjudicated in the courts in the usual and ordinary way of adjudicating constitutional rights. No rule of evidence may fritter it away. When such right is in court asking for the protection of the law, no question of public policy can affect it. The citizen deported is banished, and banishment is a punishment that can follow only a judicial determination in due process of law. Black's Law Dictionary, 4 Blackstone Commentaries, 377. True, it was held in United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, that a person asserting his right to enter the country on the ground that he is a citizen is not entitled to a writ of habeas corpus in the absence of an appeal to the Secretary of the Treasury from the order of the inspector denying his entry; and subsequently (United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040) that even after such appeal to the Secretary of the Treasury, and a denial of his right to enter, a person whose right to enter the United States is questioned under the immigration law may not obtain entry by writ of habeas corpus, even though the right claimed is in virtue of American citizenship; a very vigorous dissenting opinion by Justices Brewer and Peckham having been filed in the latter case. These cases proceed upon the principle that the person applying for the writ is not within the United States, but is seeking to enter or re-enter; and that, as against such right of entry or re-entry, the government constitutionally may make the political department the final judges. But there is a fundamental distinction between the case of a citizen of the country who has left the country and is asking to re-enter it and a citizen of the country who has never left it, but whom the government is asking to deport; and, while it is true now that the Supreme Court has so decided that the political power of the government may say whether a citizen of the country who has gone away shall be allowed to return or not, it seems to us uncontrovertible that a citizen of the country, who has not gone out, may not be deported or banished until the right of the government to deport or banish has been judicially determined. And, approached from this point of view, the case made out by appellant entitles him to a reversal of the order of the District Court."

See, also, Pang Sho Yin v. United States, 83 C. C. A. 484, 154 Fed. 660.

The order appealed from is reversed, and the cause is remanded, with instructions to discharge the appellant.