LIM SAM v. UNITED STATES.

(District Court, W. D. Texas, El Paso Division. July 27, 1911.)

No. 270.

1. EVIDENCE (§ 588*)—WEIGHT—CREDIBILITY OF WITNESSES.

The apparently inconsistent statements of two witnesses should be harmonized wherever possible, rather than impute a corrupt motive to a witness in testifying.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. § 588.*]

2. ALIENS (§ 32*)—DEPORTATION OF CHINESE.

Notwithstanding repeated illegal acts on the part of Chinamen to enter the country, the court should give a fair hearing to each case that is presented, and the testimony should be carefully weighed and considered, and there should be no radical departure from the rules of evidence in determining. the proper weight to be given to the testimony.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—DEPORTATION OF CHINESE.

Evidence *held* to demand the discharge of a Chinaman sought to be deported; it failing to impeach his testimony that he was born in this country.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Proceedings by the United States against Lim Sam. From an order of deportation, he appeals. Reversed, and appellant discharged.

This is an appeal from an order passed by the United States commissioner, June 13, 1910, deporting appellant, Lim Sam, to China. Pending the appeal in this court the appellant took the depositions of two witnesses, Lim Chung and Chin Sing, to prove his birth in San Francisco, Cal. The record discloses that these depositions were taken on the 25th day of November, 1910. On June 28, 1911, counsel for the government took the deposition of Hom Ong, for the purpose of impeaching the credibility of the witness Lim Chung. No other testimony was taken.

Turney & Burges and W. D. Howe, for appellant.
S. Engelking, Asst. U. S. Atty.

MAXEY, District Judge (after stating the facts as above). The two witnesses, Lim Chung and Chin Sing, testify clearly and with apparent truth that the appellant Lim Sam was born in San Francisco. In giving the place of birth they are specific in naming the street and number of the house. They claim to have been acquainted with the father and mother of the appellant. The latter, according to their statement, returned to China 12 or 13 years ago, and the father went back about one year prior to the earthquake in San Francisco, or about the year 1905.

Chin Sing is a merchant, residing at 2322½ Lincoln street, Alameda, Cal. Lim Chung is a laborer, and resides in San Francisco. In reference to the location of his residence, Lim Chung was asked the following question on direct examination:

"Please state your name, age, residence, occupation, and how long you have lived at your present place of abode."

He replied:

"Lim Chung; age 54 years; residence, 808 Clay street, where I have resided about three years; occupation, working man."

On cross-examination the witness was asked this question:

"If you are engaged in any business, then please give the street address of your present place of business, and state what the character of your business is, and give the names of your partners."

He responded:

"I am a working man, and work at 808 Dupont street."

In that condition of the record, counsel for the government, in order to impeach the credibility of Lim Chung, propounded interrogatories to Hom Ong, who testified that he was a merchant residing at 808 Dupont street, San Francisco, and had been there residing about 18 years. Hom Ong knew several persons named Lim Chung, but knew no one of that name living at 808 Dupont street. Counsel for the appellant propounded to the witness three cross-interrogatories:

(1) "Have you ever been acquainted with a Chinese laborer by the name of Lim Chung, or Lim Chong, who is now between 50 and 55 years of age, and will you state that there never was, and that there is not now, any such person? Answer: "I could not say whether I know him or not. There never was such a person there."

(2) "Is it not a fact that the building at 808 Clay street, in San Francisco is a building of more than one story, and that the first floor is occupied by stores and business houses, and the upper portion of the building is occupied by rooms and rooming houses?" Answer: "I don't know anything about the building at 808 Clay street. Our firm occupies the first floor at 808 Dupont street, and the upper portion of the building for lodging."

(3) "Can you, or not, state the names of all persons who have been employed, or who have worked at or with the business house doing business at 808 Clay street, or who have lived at 808 Dupont street, during the past two or three years, or who have lived or worked at either of said places during the past two or three years." Answer: "I know all the people who have worked for me in my business, but I don't know the names of all the persons who have lived or worked up stairs."

No attempt was made to impeach the testimony of the witness Chin Sing, notwithstanding he gave the name of the city, and the street address, of his residence. Nor, indeed, can it be said that counsel for the government was successful in impeaching the credibility of Lim Chung. It is manifest that the witness did not intend to convey the meaning that he was residing both at 808 Clay street and at 808 Dupont. Whether the officer taking the testimony misunderstood the witness, or inadvertently used Dupont for Clay on the cross-examination, does not appear. The record fails to explain the discrepancy. Yet counsel for the government, from this unexplained circumstance, would impute a dishonest purpose on the part of the witness, notwithstanding no effort was made, so far as the record discloses, to prove that Lim Chung did not reside at 808 Clay street.

[1] Besides, if the hypothesis be indulged that the witness intended to testify, both on his direct and cross examination, that he resided at 808 Dupont street, there would still seem to be no real inconsistency between the testimony of himself and Hom Ong on that point. While the latter knew no person of that name in the building at 808 Dupont street, he is equally clear in the statement that he did not know the names of "all the persons who have lived or worked upstairs." Would there, then, appear an irreconcilability between the testimony of the two witnesses, if Lim Chung lived in an upper room of the building? And if he did not reside there, the burden would seem to be on the government to show that fact in order to discredit his testimony. It is not difficult in the present case to reconcile and harmonize the apparently inconsistent statements of the two witnesses, and this should always be done, rather than impute a corrupt motive to the witness in testifying.

[2] The court is aware, and the records at El Paso illustrate, that large numbers of Chinamen have crossed the Rio Grande by stealth and unlawful methods for the purpose of coming into the United States. Indeed, the records of the court disclose that not only a great many Chinese persons have been deported for being unlawfully in the country, but that a number of Chinamen and Americans have been punished for conspiracy to evade, in various ways, the exclusion acts. These considerations require vigilance on the part of the immigration officials and of the court to see to the proper enforcement of such laws. But, notwithstanding the repeated illegal acts on the part of Chinamen to enter the country, the court should give, as it has always endeavored to do, a fair hearing to each case that is presented. Upon the hearing the testimony should be carefully weighed and considered, and there should be no radical departure from the rules of evidence in determining the proper weight to be given to the testimony.

[3] Tested by the ordinary rules of evidence, the court is of the opinion that the government has failed to impeach the credibility of the witness Lim Chung; and, having made no effort to impeach the witness Chin Sing, the court is further of the opinion that the appellant, as shown by the proof, was born in San Francisco, and hence that he should be discharged.

Counsel for the appellant refer in their brief to the cases of Moy Suey, 147 Fed. 697, 78 C. C. A. 85, Pang Sho Yin v. United States, 154 Fed. 660, 83 C. C. A. 484, and Gee Cue Beng, 184 Fed. 383, 106 C. C. A. 493. And it is stated that Judge Pardee, in Gee Cue Beng's Case, "approves in toto" the Case of Moy Suey. The inference to be deduced from the statement of counsel is that the Circuit Court of Appeals for this circuit has decided that where Chinamen, who claim to be citizens of the United States, are arrested for being unlawfully in the country, the burden rests upon the government to show that they are not natives. In other words, it seems to be claimed that the Chinaman arrested may stand upon his mere assertion of citizenship, without proof, and thus compel the government to prove a negative. The court deems it unnecessary, in this case, to enter upon a discussion of that question, and merely refers to the following authorities:

which may be profitably consulted: Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; United States v. Hoy Way (D. C.) 156 Fed. 247; Yee King v. United States, 179 Fed. 368, 102 C. C. A. 646; Kum Sue v. United States, 179 Fed. 370, 102 C. C. A. 648; United States v. Too Toy (D. C.) 185 Fed. 838.

The order of deportation should be reversed, and the appellant discharged; and it is so ordered.