## WOO JEW DIP v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1911.)

No. 2,216.

1. ALIENS (§ 32*)—DEPORTATION OF CHINESE—APPEAL.
    An appeal will lie to the Circuit Court of Appeals from a judgment of the District Court affirming an order of deportation.
    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—DEPORTATION OF CHINESE—EVIDENCE.
    A deportation proceeding is civil in its nature, and therefore to be decided by the preponderance of the evidence.
    [Ed. Note.— For other cases, see Aliens, Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—DEPORTATION OF CHINESE—EVIDENCE OF CITIZENSHIP.
    In a Chinese deportation proceeding, evidence held to require a finding that the alleged alien is a native-born citizen of the United States.
    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*
    What Chinese persons are excluded from the United States, see notes to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Western District of Texas.

Deportation proceedings by the United States against Woo Jew Dip. From an order of deportation, the alleged alien appeals. Reversed.

W. D. Howe, for appellant.
Charles A. Boynton, for the United States.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

PARDEE, Circuit Judge. This appeal was submitted on the record without argument. The case shows that on the 20th of April, 1908, on a warrant of that date charging that one Woo Jew Dip

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

did unlawfully, and in violation of the Chinese exclusion acts of the United States, 'enter into and be and remain in the United States, Woo Jew Dip was arrested and brought before a United States commissioner, whereupon he pleaded "not guilty," and demanded time to secure an attorney, offered bond in the sum of $500, which was accepted, and the case was set for hearing on May 20, 1908; that on May 17, 1910, the commissioner, reciting numerous whereases in regard to the arrest of said Woo Jew Dip, and particularly "whereas said Woo Jew Dip has failed to establish by affirmative proof to my satisfaction his lawful right to remain in the United States, and has not made it appear to me that he is a subject and citizen of any other country than China, and whereas from the foregoing facts I find and adjudge the said Woo Jew Dip to be unlawfully in the United States, ordered that the said Woo Jew Dip be deported from the country and removed to China"; that from the order of the commissioner an appeal was taken to the District Court of the United States for the Western District of Texas, wherein, and on the 4th day of April, 1911, the said judgment of deportation was in all respects affirmed, and from that judgment this appeal is prosecuted.

The contention before the District Court was that the said Woo Jew Dip was a citizen of the United States, having been born therein in the city of San Francisco, state of California. On the appeal the evidence offered by the appellant was by Chinese witnesses of long and undisputed residence in the United States. The appellees offered no witnesses, apparently relying upon the appearance of the appellant, his alleged statements before the commissioner, and the cross-examination of appellant's witnesses.

Lee Choori testified:

"My name is Lee Choori. I reside at 809½ Webster street, Oakland, Cal. I am 63 years of age, and am employed in a general merchandise store, Quong Wo Sing, 809½ Webster street, Oakland. The photograph shown me is that of Woo Yow (Jew) Dip, the defendant. I know that he was born at Sam Toy Low, 824 Dupont street, San Francisco, Cal., about Kwong Suey, sixth or seventh year. He was one month old when I first saw him. I was acquainted with both his father and his mother. His father's name was Woo Woh Ling, and his mother's Ng Shee. His father was a doctor in San Francisco for about 20 years. I knew his father from Kwong Suey sixth year until the twenty-fourth or twenty-fifth year of Kwong Suey. I have known this boy from the time he was a month old up to the time he went to El Paso, Kwong Suey thirty-third year twelfth month. The last time I saw him was just before he went to El Paso. His parents are in China, but whether alive or dead I do not know."

The cross-examination of this witness tended to corroborate the evidence in chief by showing that Woo Jew Dip never left the United States, remained in San Francisco, and worked in a laundry on Pacific street, San Francisco, at the time of the earthquake.

Lee Now testified as follows:

"My name is Lee Now. My age is 63 years. I am working in a broom factory, and reside at 348 Pacific street, between Sansome and Battery. The photograph shown me is that of Woo Jew Dip. He was born at 824 Dupont street. I was so informed by his parents. He was about a month old when I first saw him. I knew both of his parents. Woo Woh Ling was his father and his mother Ng Shee. His father was a doctor here for about 20 years.

The period of time I have known the defendant is about 26 or 27 years. I last saw him in the latter part of the year 1907 or the first part of 1908. His parents are in China. I don't know whether they are living or dead."

His cross-examination develops nothing favorable to the government's side of the case, and mainly corroborated the evidence in chief in showing that Woo Jew Dip lived in San Francisco for some years, and worked in a laundry up to the time of the earthquake.

Yee Len testified in open court. His testimony given in question and answer covers several pages of the record, and is to the effect that he has lived in San Francisco since 1873 up to the time of the earthquake, was engaged in business at a store across the street from 824 Dupont street where Woo Jew Dip was said to have been born. He there saw Woo Jew Dip frequently and at intervals of two weeks to two months, and he used to come in the store, and bought things of witness and bought things a good deal. Witness left San Francisco the next day after the earthquake; went to San Mateo, where he stayed a couple of weeks, and from there went to El Paso, where he has lived ever since. He first saw Woo Jew Dip in El Paso, two years after witness came there, at work in a laundry, and is sure he is the same man he used to see in California.

This examination, long drawn out, seems not to be conflicting in any material matter.

Fung Ming, official interpreter, testified that it was the habit of the Chinese of this country in naming or christening boys to have a feast or something of the kind about a month after the birth, which tended to corroborate the witnesses Lee Choori and Lee Now as to how they came to see Woo Jew Dip when he was a month old. The interpreter was then cross-examined and then re-examined with regard to the statement made by one Woo Jew Dip when he was examined before the commissioner and as to the principal differences between his reported answers at that time and his answers on the stand before the court with reference to the names of the witnesses that he relied upon to prove his birth in this country, and as to whether he had any blood relations, and especially to one Woo Ming, who is said to be an uncle. In that evidence and in his examination before the immigration officer there are inconsistencies and contradictions that throw some doubt on appellant's truth-telling instincts and capacity, but none to any such extent as would warrant us to ignore and reject the direct evidence of the witnesses Lee Choori, Lee Now, and Yee Len. The most suspicious circumstance in the whole evidence is that, when he was examined before the commissioner, he was asked:

"Q. When did you leave China? A. I never was in China. I was born in this country.

"Q. Have you any paper of any kind showing your right to be in this country? A. I have a native son paper.

"Q. Where is it? A. In the lawyer's hands.

"Q. Why is it in the lawyer's hands? A. I was afraid I would lose it.

"Q. What lawyer? A. Judge Dean.

"Q. Where did you first meet Judge Dean? A. I am not formally acquainted with him, but my friend was well acquainted with him.

"Q. What is your friend's name? A. Yee Lin.

"Q. Where did you first know Yee Lin? A. I met him first at Wing Wah Sang laundry.

"Q. Did you know anybody in this town when you first arrived here? A. I have some tribal cousins here.

"Q. You had never seen them, had you? A. No.

"Q. Did you know their names? A. One of them who lived in the same village with my parents.

"Q. Did you see him in that village? A. No.

"Q. How did you know him then? A. I heard about him.

"Q. Where did you hear about him? A. In San Francisco.

"Q. Had you ever seen him? A. No.

"Q. Where did you get that native son paper? A. San Francisco.

"Q. Whom did you get it from? A. Woo Ming got it for me.

"Q. Whom did he get it from? A. From the court house.

"Q. What did he pay for it? A. I don't know what the expenses were.

"Q. Did you pay those expenses? A. Woo Ming paid for them.

"Q. How much did you promise to pay for that paper? A. He is my cousin. I did not make any agreement with him."

In Woo Jew Dip's examination before the District Court he was not asked anything about a native son paper, and only the merest incidental reference was made by any question or answer to the fact that Woo Jew Dip had stated anything before immigration officers. No further inquiry seems to have been made at any time as to the alleged native son paper, nor is there any explanation given why Judge Dean was not called as a witness.

[1-3] The right of appeal to this court is unquestioned, and the appellant is entitled to our conscientious judgment. See Gee Cue Beng v. United States, 184 Fed. 383, 106 C. C. A. 493, and authorities there cited. On the evidence, we find no sufficient reason to assign perjury to the appellant and his witnesses, and without such assignment we are bound to take their evidence as practically undisputed. The case itself and certain circumstances developed by the evidence may engender some suspicion, even doubt, on the main proposition, but these deportation cases are civil, and not criminal, in their nature (U. S. v. Hung Chang, 134 Fed. 19–25, 67 C. C. A. 93, and cases there cited), and therefore to be decided by the preponderance of the evidence, even if, as is so strenuously contended, the burden of proof is on the person charged with alienage, but asserting citizenship to prove his citizenship. There cannot be any question that here the evidence in favor of the appellant outweighs all that can be claimed to the contrary by the United States. On the evidence Woo Jew Dip is a citizen of the United States. United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890.

The judgment of the District Court is reversed, and the cause is remanded, with instructions to discharge the appellant.