MOY SUEY v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.   August 11, 1906.)

No. 1,239.

1. ALIENS—PROCEEDINGS FOR DEPORTATION OF CHINESE—CLAIM OF CITIZENSHIP.
   A resident of the United States claiming to be a native born citizen, although of the Chinese race, may not be deported or banished until the right of the government to deport or banish has been judicially determined in accordance with the usual and ordinary rules of evidence.

2. SAME—EVIDENCE CONSIDERED.
   In proceedings for the deportation of a Chinese person charged with being unlawfully in this country, which were resisted on the ground that defendant was a native born citizen of the United States where his testimony was consistent and explicit, giving his place of birth, residence at different times, place of attending school, and the occupation and places of business of his father and uncle, and was corroborated by the testimony of his uncle and cousin, and wholly uncontradicted, his deportation was not warranted by a finding that he had not established his right to remain in the United States "by affirmative proof to the satisfaction of the commissioner," as required by section 6, Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Benjamin C. Bachrach, for appellant.
Elwood G. Godman, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge.   Moy Suey, appellant, was arrested Feb. 7th, 1904, as a Chinese person in the United States in violation of section 6 of the Act of May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], amended Nov. 3, 1893; the specific charge being that he was a Chinese laborer unlawfully in the United States, without a certificate of registration.   At the final hearing before the Commissioner, Suey resisted an order of deportation, on the ground that he was a citizen of the United States, having been born in New York City twenty-two years previously.   The Commissioner, however, found that he had not "satisfactorily established, by affirmative proof, his lawful right to be and remain in the United States," and entered an order for deportation; and on appeal to the District Court, this order was affirmed.

The evidence before the Commissioner, and the District Court on appeal, consisted chiefly of the testimony of appellant himself, and of his uncle and cousin.   The appellant testified that he was born in New York City; giving the name of his father and mother; and the name of the Chinese mercantile firm of which his father was a member; also the street, and the street number of the house in which he lived up to the time he left New York.   He stated further that he went to an American School at Second Avenue and Fifty-ninth Street, that he went to a Sunday School.   His father having returned to China, when he was about ten years old, appellant went to live with his uncle, giving, in his testimony, the street and number of his uncle's residence,

as well as the name of his uncle. He came from New York to Chicago, according to his testimony, with his cousin, giving the name of his cousin, and the place where both he and the cousin had worked in a laundry in the city of New York. And all of this testimony, so far as the uncle and cousin were connected with it, was re-enforced by their testimony. With slight differences—differences of a character that strengthen rather than impeach the credibility of the witnesses—the testimony of all the witnesses is harmonious.

Against this the government has brought nothing, either to impeach the credibility of the witnesses, or disprove the probability of their narrative, excepting this, that when first approached by the inspector, appellant refused to talk, further than to say that he was a native of the United States, but had forgotten the date and place of his birth. There is no testimony, for instance, throwing doubt upon the fact that there was a Chinese mercantile firm of the name stated; or of the fact that appellant attended the schools named, or the Sunday School; or of the fact that the street and number named was the residence of Chinese twenty-two years ago, when appellant was born; or of the fact that the uncle and cousin lived where appellant stated they lived, and were engaged in the business that appellant stated they were engaged in; or of any other fact upon which appellant built up his case of nativity. Indeed, upon the testimony presented, were the inquiry one respecting the descent of property, or something other than deportation dependent upon appellant's nativity, the testimony thus uncontradicted would be accepted by any court as the proven record truth.

But the government claims, that under section three of the deportation act, any Chinese person or person of Chinese descent, shall be adjudged to be unlawfully within the United States, unless such person shall establish, "by affirmative proof, to the satisfaction of the judge or commissioner, his lawful right to remain in the United States"; and that this provision, in some way, nullifies the weight that would otherwise be given to the evidence referred to. Unquestionably Congress has power to exclude from our shores aliens of any birth, including the Chinese; and having that power, has the power also to prescribe the conditions on which such exclusion shall be exercised. That the conditions prescribed may be hard would, in a judicial inquiry, be of no moment, for under such circumstances the question is not one of constitutional right, but of national policy. Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; The Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721. But when a person, physically and politically present in the United States at the time he is arrested for deportation, claims that he is an American born citizen, and resist deportation on the basis of his rights of citizenship, the case is an entirely different one. Nativity gives citizenship, and is a right under the Constitution. It is a right that congress would be without constitutional power to curtail or give away. It is a right to be adjudicated in the courts, in the usual and ordinary way of adjudicating constitutional rights. No rule of evidence may fritter it away. When such right is in court asking for the protection of the law, no question of public policy can affect it. The citizen deported

is banished, and banishment is a punishment that can follow only a judicial determination in due process of law. Black's Law Dictionary, 4 Blackstone Commentaries, 377.

True it was held in United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, that a person asserting his right to enter the country, on the ground that he is a citizen, is not entitled to a writ of habeas corpus in the absence of an appeal to the Secretary of the Treasury from the order of the inspector denying his entry; and subsequently (United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040) that even after such appeal to the Secretary of the Treasury, and a denial of his right to enter, a person whose right to enter the United States is questioned under the immigration law may not obtain entry by writ of habeas corpus, even though the right claimed is in virtue of American citizenship—a very vigorous dissenting opinion by Justices Brewer and Peckham having been filed in the latter case. These cases proceed upon the principle that the person applying for the writ is not within the United States, but is seeking to enter or re-enter; and that as against such right of entry or re-entry, the government constitutionally may make the political department the final judges.

But there is a fundamental distinction between the case of a citizen of the country who has left the country and is asking to re-enter it, and a citizen of the country who has never left it, but whom the government is asking to deport; and while it is true, now that the Supreme Court has so decided, that the political power of the government may say whether a citizen of the country who has gone away shall be allowed to return or not, it seems to us uncontrovertable that a citizen of the country, who has not gone out, may not be deported or banished until the right of the government to deport or banish has been judicially determined. And approached from this point of view, the case made out by appellant entitles him to a reversal of the order of the District Court. The order of the District Court, affirming the order for the deportation of appellant, is reversed, and the cause remanded with instructions to discharge the appellant.