## UNITED STATES v. TOO TOY.

(District Court, S. D. New York. March 4, 1911.)

1. ALIENS (§ 32*)—CHINESE DEPORTATION PROCEEDINGS—BURDEN OF PROOF.
   Under Immigration Act May 5, 1892, c. 60, § 3, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1320), providing that any Chinese person or person of Chinese descent arrested under the provisions of the act shall be adjudged to be unlawfully within the United States. unless such person shall establish, by affirmative proof. to the satisfaction of the justice, judge, or commissioner, his lawful right to remain, the burden rests on the defendant in Chinese deportation proceedings to establish his right to remain, notwithstanding he has been arrested within the country, and claims to be a native born citizen.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*
   What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

2. ALIENS (§ 32*)—DEPORTATION PROCEEDINGS—EXECUTIVE JURISDICTION.
   Since the issue on which the power to deport aliens depends may itself be determined by the executive officers of the government as an incident to the exercise of the power. it is not material whether the alien is taken at the borders of the country or within it; the right of a citizen to enter the country being entitled to the same protection as his right not to be deported.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

# UNITED STATES V. TOO TOY 839

3. ALIENS (§ 32*)— CHINESE DEPORTATION PROCEEDINGS — CITIZENSHIP — EVI·
DENCE.

Evidence *held* insufficient to establish that respondent in Chinese de-
portation proceedings was entitled to remain in the country as a natural
born citizen.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Chinese deportation proceedings by the United States against Too
Toy. From an order of deportation, defendant appeals. Affirmed.

This is an appeal to the District Court from an order of the United States
Commissioner under section 3 of the act of May 5, 1892, c. 60, 27 Stat. 25
(U. S. Comp. St. 1901, p. 1320), ordering the deportation of a Chinese person.
It is substantially conceded that the defendant is a Chinese person, but his
position is that he was born in the city of San Francisco in the year 1887.
In support of this he presents the testimony of himself, his brother, his uncle,
his father-in-law, and his first cousin. He swears that he was taken to China
by his parents when two years old, and lived there until he was 18, when, in
the year 1905, he came to San Francisco, was admitted, and came from there
direct to New York, where he went into his brother's laundry and worked
until his arrest. He says that his admission was upon a certificate made out
for him by his father in China before his father came back to the United
States, which was in the year 1890, where he stayed until 1899, and then
came back in that year to China and died. This certificate was taken from
him at San Francisco by the inspector who gave him another paper in place
of it, which paper the defendant has lost. It is a fact that at the time in
question the regulations of the department directed inspectors to take up cer-
tificates of Chinese persons upon their entering into the country.

The defendant's uncle swears that he saw the defendant as an infant in
San Francisco with his parents, and knew that he was born in the year 1887,
that the boy was named Too Toy, and that the family went to China shortly
after, where the witness met them in 1895. At that time there were three
boys living with them. The witness came back to this country in 1891, and
did not see the defendant again until he met him in New York seven or eight
years ago. He remembers attending his birth celebration in San Francisco
in 1887.

The defendant's father-in-law remembers seeing the defendant's mother
holding him in her arms 24 years ago as an infant. At that time the de-
fendant's father ran a Chinese grocery store. When the family went to
China, the witness directed his wife to give their daughter to the defendant
in China to marry, which she did. He identifies the boy he saw in San Fran-
cisco as Too Toy, because he had a letter from home to that effect.

A cousin of the defendant testifies that he came to the United States 26
years ago; that in 1891 he met the defendant's father, who was his own
uncle, in New York; and that it was common talk among their friends that
they had a boy, Too Toy, born in San Francisco. His uncle died in China in
the year 1899, but the witness went to China 11 years ago after his uncle
died, and there saw Too Toy and his mother. At that time he saw the "na-
tive" certificate, so called, given by the defendant's father to him. He has
no direct knowledge of the birth of the defendant in the United States. To
the certificate was attached the photograph of a baby.

The defendant's half-brother testifies that he came to this country 17 or 18
years ago; that he saw his father in America first in 1891; and that Too
Toy was then in China, and that the witness had seen the defendant in China
in 1890, when he was 3 years old. He never knew the defendant's mother
who was his father's second wife in this country, but knew that he had mar-
ried her here, and it was common talk in the family that the defendant was
born in San Francisco. His own father had told him so. The defendant
came to visit him five years ago and has worked with him in his laundry
ever since.

To meet this testimony, the government offered evidence of the inspector
and an official Chinese interpreter, who both testified that at the time of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

arrest they found the defendant in his laundry at work, and took him aside alone and questioned him, having first informed him that what he said would be used against him. This questioning was done through the interpreter, and the questions and answers were taken down by the inspector at the time in a notebook, which was put in evidence. The upshot of the defendant's answers was that he was 23 years old; had been in this country about 5 years, where he came from Canada without having any paper; that he had been born in China, that his father had been in the United States, but had gone back, and his mother had never been here; that he had but one brother who worked in the laundry with him; that he had no papers entitling him to remain in the United States.

' The government has also offered in evidence testimony of the brother himself taken under the same circumstances and at the same time, in which he stated that the defendant had been born in a small town in New York state whose name he did not know; that he had been born before the witness came to the United States; that the defendant had gone back to China two years after the witness got to this country, but had come back five years ago in what way he did not know. The government inspector swore that he knew some Chinese, and had understood when the interpreter asked the defendant whether he was born in China and the defendant when he said that he was not. The interpreter, who spoke the same dialect as the defendant, swore that the question which the inspector reported as "Where were you born?" was, in fact, no different from "Where did you come from?"

Testimony was given by white persons to the effect that the defendant had been in this country for some years and was a person of good moral character. One of these witnesses was sworn before the district judge, after the certificate of committal of the commissioner.

Roger H. Clarke, for United States.
Max J. Kohler, for defendant.

HAND, District Judge (after stating the facts as above). I shall assume that under Liu Hop Fong v. U. S., 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888, the new trial granted upon appeal in these cases requires a complete examination de novo without regard to the commissioner's findings, and I shall treat the case in that way, without deciding whether the defendant has a right to that or not. On the other hand, I shall likewise assume that section 3 of the act of 1892, 27 Stat. 25, applies, and that the burden rests upon the defendant in spite of the fact that the issue is citizenship, and that he has been arrested in the country. It is quite true that in Moy Suey, 147 Fed. 697, 78 C. C. A. 85, a distinction is taken between a Chinese person entering the United States and so covered by United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, and a Chinese person who has got in and is arrested here, but, that decision not being binding upon me, I cannot follow it. The doctrine of Ju Toy v. U. S., supra, which that case held had been implicitly affirmed in several previous cases, was this: The United States has the power to determine through the executive department the very issue of fact upon which its power of exclusion depends, and it is not enough to give jurisdiction to a court that that issue involves citizenship—a fact, which, if proved, would remove the applicant from the operation of the power. Now, if the issue on which the power depends may itself be determined by executive officers, as an incident to the exercise of the power itself, it can be of no consequence whether the alleged alien be at the borders of the country or within it. A citizen is as much

protected in his right to enter the country as in his right not to be deported, while he is here. Indeed, that was expressly assumed in U. S. v. Ju Toy, 198 U. S. at page 263, 25 Sup. Ct. 644, 49 L. Ed. 1040. The point in that case was whether one who might be a citizen could have that right taken from him by executive hearing, and the decision admitted and accepted that possibility. Even if it be conceded that there is greater likelihood of that possibility's occurring in the case of persons arrested within the country, the power does not depend upon the unlikelihood of its depriving a citizen of his constitutional rights. It exists, because it is a necessary incident to an unquestioned constitutional power, to the exercise of which it is a reasonable adjective regulation. In Moy Suey v. U. S., supra, the court says that a citizen who has never gone out of the country may not be banished without judicial decision. This, it seems to me, involves two difficulties: First, it begs the question by assuming that the applicant had in fact always been within the country which after U. S. v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, would involve his citizenship; and, second, it assumes that a citizen's rights are different after he leaves the country from what they are while in it, which, as I have already said, is not the law. A citizen, like any one else, must submit to that determination, if it be a reasonable adjunct to an admitted national power. Therefore I affirm the holding of the commissioner that the defendant must affirmatively show that he was born within the United States.

I am certainly not satisfied by the evidence. All the witnesses are nearly connected with the defendant, and have a natural bias in his favor. This in itself might not be enough to justify me in disregarding it, were it not for the contradictory statements made by the defendant himself and his brother. Unless these are to be discredited, they are conclusive. I do not think I ought to disregard the testimony of the inspector, who was present at the time and whose contemporaneous notes are an undoubted record of what the defendant and his brother said, provided the inspector himself and his interpreter be not perjured. Allowing that his position may have given him some interest in securing convictions, it would attribute to him a singular baseness to assume that he had put down at the time what he knew to be false. Of course, the interpreter might similarly have misstated the answers, but the motive is nothing like so powerful as that of all the defendant's witnesses. I do not think that such an admission should be discredited. It is taken at once without preparation, and is the most likely expression of the truth. If the government were called on to make a case, the result would be doubtful, but I am distinctly proceeding upon the theory that it is not, and that the defendant has the burden.

I agree with the finding of the commissioner that the proof is not satisfactory of the defendant's birth in this country, and the order of deportation is therefore affirmed.