# CHIN WAH *v.* UNITED STATES.

ALIENS; EXCLUSION; CHINESE; CONSTITUTIONAL LAW; CITIZENSHIP; EVI-
.. DENCE; BURDEN OF PROOF.

1. One born of Chinese parents domiciled in one of the states of the
   Union, and not employed in any diplomatic or official capacity, be-
   comes at his birth a citizen of the United States by the terms of
   the 14th Amendment of the Constitution of the United States.

2. A certificate of a United States commissioner, showing that a China-
   man had, under a certain name, been adjudged by him to be law-
   fully in the United States, and a certified copy of the fee bill in
   that case, are admissible, in a subsequent proceeding of the same
   kind, to corroborate testimony that the defendant, who bore a dif-
   ferent name, was the person tried in the proceeding to which the
   certificate relates, where, although the certificate is not a certified
   copy of a court record, it appears that the Commissioner kept no
   judgment records.

3. A report to the Department of Justice of an investigator of charges
   against a United States commissioner, reciting that the latter had
   tried a Chinaman upon the charge of being unlawfully in this
   country, is inadmissible in a subsequent proceeding of the same
   kind, in which the defendant claims to have been the person tried
   and discharged by the Commissioner, though bearing a different name
   than the one in the former proceeding.

4. Unimpeached testimony of birth in this country and consequent citizen-
   ship is sufficient to establish, as required by sec. 3 of the act of
   Congress of May, 1892, his lawful right to remain here, upon the
   arrest of a Chinaman under the provisions of such act.

5. It would seem that the burden of overthrowing defendant's prima
   facie case of birth in this country and consequent citizenship rests
   upon the government, where a Chinaman has lived here for a long
   time, and when arrested for remaining here claims, by reason of
   birth here, to be a citizen.

No. 2699.   Submitted December 7, 1914.   Decided January 4, 1915

HEARING on an appeal by the defendant from a judgment of

the Supreme Court of the District of Columbia affirming an
order of deportation of a United States Commissioner.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of
the District of Columbia. Chin Wah, appellant, was arrested
as a Chinese person in the United States without authority,
and ordered to be deported to China by order of the United
States commissioner March 26, 1914. He appealed therefrom
to the supreme court of the District. That court upon hearing
affirmed the order of the commissioner, and Chin Wah has again
appealed.

On the trial the defendant offered in evidence a certificate
issued by Felix McGettrick, United States commissioner for
the district of Vermont, dated May 14, 1897, showing that
Chin Leong Say had been adjudged to be lawfully in the United
States by him. This was excluded, and exception reserved. He
then offered a report of Examiner Plato Mountjoy, dated Janu-
ary 25, 1896, to the Department of Justice, referring to the
case of Chin Leong Say, and [stating] that, in his opinion,
Commissioner McGettrick had tried the case of the said Chin
Leong Say.

This was accompanied by evidence tending to show that the
appellant, Chin Wah, had been tried under the name of Chin
Leong Say by Commissioner McGettrick, and discharged.

It appears by the bill of exceptions that Chin Wah had been
arrested by a United States inspector on March 5, 1914, at
a laundry in Washington, D. C.; that the inspector, through
an interpreter, interrogated said Chin Wah, and took down his
statements in shorthand, which he later wrote out in longhand.
The same was produced and read. From this statement it ap-
pears that the defendant gave his name as Chin Wah, and his
married name as Chin Suey Wah, age forty-seven; that he did
not know where he was born. His parents' names and resi-
dence were given as Chin Mong Dung, his father, and Ung

Shee, his mother, residence Hung How village, China. It was also stated that his father had lived in the United States, and that his father and mother had told him he was born in the United States, and carried back to China by them when he was very young; that he had come to Canada in 1894, and from there to the United States; that he had been arrested and tried and given the certificate heretofore mentioned. He had come to New York, and from thence to Washington, where he had since lived.

It was proved by the government interpreter that the only rule pronouncing Chinese names in English was by sound.

Appellant testified of his arrest on the train from Montreal at St. Albans, Vermont; that he was carried in a few days to a town nearby and tried before Commissioner McGettrick, who gave him the certificate.

On behalf of appellant, one Lee Woy testified that he came to the United States in 1866, and lived for five years in San Francisco; that he knew Chin Mong Dung, who kept a grocery store in San Francisco, and also his wife, Ung Shee; knew that Chin Wah was born in San Francisco; saw him there as a baby, and afterwards saw him in China, to which his parents had returned; was then about thirteen years old; that he had seen Chin Wah at Richford or St. Albans, Vermont, afterwards in New York, and since in Washington. Was present at Chin Wah's trial in Richford or St. Albans before a United States commissioner; that two Chinamen testified in that case, and also a white boy, but does not know what they testified to; was himself sent for as a witness by Chin Wah, but attorney did not call him.

Lee Kim, another witness for Chin Wah, testified to having lived in San Francisco, where he knew Chin Wah's parents; that they had a baby born there whom he knew to be the defendant. Name was Chin Suey Wah or Chin Leong Say. Defendant was about from one to two years old when witness left San Francisco. That he saw defendant afterwards in China, with his parents, when he was about thirteen years old.

The following stipulation was entered into by the government:

"Commissioner McGettrick kept no docket or record of his cases, and turned none such over to the clerk of the United States district court in Vermont. He depended upon memoranda or simply note-books, containing simply the name of the defendant, and frequently only stating the disposition of the case. These fragmentary or sporadic documents, with the complaint, orders for processes, warrants, and marshals' returns, were turned over to the clerk of the court at Burlington, Vermont, by McGettrick."

After this stipulation, defendant offered in evidence the certificate which he stated had been given him by Commissioner McGettrick after his trial. This certificate, signed by McGettrick, shows that May 14, 1897, at Richford, Vermont, a complaint had been presented charging Chin Leong Say with violation of the statutes of the United States, and that upon full hearing, defendant had been discharged, and it was adjudged that said Chin Leong Say had the lawful right to be in the United States. This certificate, dated May 26, 1897, was excluded.

There was also offered a certified copy of a fee bill among the papers turned over by McGettrick to the clerk of the district court for the district of Vermont, which shows the names of witnesses in the case of Chin Leong Say as Moy Loy, J. A. Kelly, and Chin Goon. This was excluded, and exception reserved.

There was next offered a certified copy of the report of Plato Mountjoy, an examiner for the Department of Commerce and Labor, made to the Department of Justice. It seems that this examiner had been instructed to investigate charges of misfeasance made against McGettrick as commissioner.

The part of the report is as follows:

"May 14, 1897. Chin Leong Say Fees $9.25" (This was one of a number of Chinese cases embraced in said report). "The Commissioner (meaning McGettrick) is positive that he tried these persons, for his notes show it. He is a bold man

who would venture to make any definite statements where any
Chinese names occur, for they are so queer and peculiar, but I
do not think that these names are to be found in the marshal's
accounts for that quarter.   The commissioner claims 88 cases,
the marshal's force apparently arrested only 76 Chinese persons.
Unfortunately Mr. Senter was sick and did not attend a single
Chinese hearing that quarter, so that he can throw no light
on the subject.   The commissioner thinks that he may have
mislaid the warrants and he is sure that he tried the Chinamen;
I think that it is very possible that he did try them, though
the marshal's accounts seem to be against him.   But I am clearly
of the opinion that, unless I have made some clerical error, he
should not be allowed a single, solitary nickel out of the $788.20
which I recommend to be disallowed."

This was excluded, and exception reserved.

Error has been assigned on the exclusion of these certifi-
cates and reports, as well as to the finding of the court that
Chin Wah was not a citizen of the United States.

*Mr. Creed M. Fulton* and *Mr. Jesse E. Polbury* for the ap-
pellant.

*Mr. Clarence R. Wilson* United States District Attorney,
*Mr. Walter Bruce Howe,* and *Mr. J. E. Laskey* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

If it be true that Chin Wah was born of Chinese parents
domiciled in California, and not employed in any diplomatic
cr official capacity, he became at his birth a citizen of the United
States by the terms of the 14th Amendment.   *United States* v.
*Wong Kim Ark,* 169 U. S. 649, 42 L. ed. 890, 18 Sup. Ct.
Rep. 456.

The certificate of McGettrick, not being a certified copy of
any record of his court, is not admissible as such, but it was
admissible in corroboration of the witnesses who testified to the

trial, especially in company with the stipulation as to McGettrick's failure to keep judgment records. It tended to show, at least in corroboration of the witnesses, that such a trial. had been had at the time, and that Chin Wah was arrested and tried under the name of Chin Leong Say. The certified copy of the fee bill in that case was also admissible for the same purpose. The report of Mountjoy was properly excluded.

The witnesses were unimpeached, and their testimony made a prima facie case of Chin Wah's birth in the United States and consequent citizenship. · It is true that sec. 3 of the act of May, 1892, provides that a Chinese person, or person of Chinese descent, arrested under the provisions of this act or the acts hereby extended, shall be adjudged to be unlawfully in the United States unless such person shall establish, by affirmative proof to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States.

It has been held by the circuit court of appeals for the seventh circuit that this provision does not apply in the case where the defendant asserts citizenship of the United States, and that the burden of proof is upon the government in such a case. *Moy Suey* v. *United States,* 78 C. C. A. 85, 147 Fed. 697, 699.

It is not necessary to decide this question, for it seems that the testimony was sufficient to establish the fact as required by the section. It does seem, however, that where a Chinese person has lived in the United States for a long period of time, and when arrested claims that he was a citizen of the United States by virtue of his birth in one of the states of the Union, the government should have the burden of overthrowing the case made by the defendant.

The judgment is therefore reversed, and the cause remanded, with direction to discharge the defendant unless there may be further evidence offered by the government in disproof of his case.                                                               *Reversed.*