## LO KEE v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
March 16, 1929.

No. 5308.

John R. Upton and Guion & Upton, all of New Orleans, La., for appellant.

Edmund E. Talbot, U. S. Atty., of New Orleans, La.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The appellant, a Chinese person, appeals from an order of the District Court of the United States for the Eastern District of Louisiana, directing that he be deported because, when arrested, he was in the United States, engaged as a laborer, in violation of the Chinese Exclusion Act (section 13 of the Act of September 13, 1888, 8 USCA § 282).

Lo Kee was 27 years old when arrested, and had been in New Orleans for 12 or 14 years, working in restaurants. He testified that he was born in Honolulu, Hawaii, in 1901; that his father and mother were also born in Honolulu, his father being Chinese and his mother Mexican; that he came to San Francisco when he was 2 years old with his parents; that his father and mother died in San Francisco when he was 5 years old; that after the death of his parents he lived with his cousin Lum Sam in San Francisco for 6 years; that he came to New Orleans with Lum Sam, when he was 11 years old, and lived in New Orleans with another cousin, Luk Sang, at 1108 Tulane avenue; that Luk Sang had returned to China; that appellant had no papers to show his birth; that he had never been in any country except the United States; that he was married in New Orleans on April, 24, 1923, to an American woman, and had two children, one 21 months old and one 4 months old; that he had derived his information as to the time and place of his birth and that of his parents from his cousin, who claimed to have been given the information by his father.

Three white witnesses testified that they had known Lo Kee in New Orleans from 8 to 14 years, and that he was a man of good character. Lo Kee's wife testified that Lo Kee had told her, before their marriage, that he was born in Honolulu, came from there to San Francisco as an infant with his parents, and from San Francisco to New Orleans, when a little boy, and had lived with his cousin on Tulane avenue, and had lived in New Orleans since he was 11 years old; that his parents died when he was a baby, and he remained in San Francisco until he came to New Orleans. Evidence was introduced tending to show that his wife was a woman of good character.

The evidence as to the appellant's birth in Honolulu, and his coming to San Francisco, and then to New Orleans after the death of his parents, and while he was still a child, is that of the appellant alone, and is in part hearsay. It might of itself be insufficient to show that the appellant lawfully entered the United States and was lawfully there when arrested. His race and his not having any papers placed the burden on him to show that he was entitled to remain in this country.

There were no other circumstances of suspicion attending his presence here.

If he was born in Honolulu in 1901, he was a citizen of the United States, and entitled to come here. Act of Congress approved April 30, 1900, § 5; 48 USCA § 495. If he was born in Hawaii after its annexation to the United States, being a citizen thereof, he would not be debarred from coming to the United States because of section 101 of that act (8 USCA § 294), though he were a laborer. If he was only 2 years old at the time of his coming to this country, he could not well be classed as a Chinese laborer. When arrested, he was in this country claiming to be a citizen thereof, and entitled as such to remain here, if he could establish his facts. Being without papers, the burden was on him to establish them. His uncorroborated hearsay testimony as to his birth and early childhood, even if it were competent as family reputation evidence, might not be enough.

There is, however, the additional evidence of three disinterested witnesses of good character that they had known him in New Orleans for a period of from 8 to 14 years before his arrest. It was clear from their testimony that he had been in this country for at least that long without any interference from the immigration officers. This was some corroboration of his evidence that he had lawfully entered and was lawfully in this country at and before the time of his arrest. His coming here while still an infant, and the death of his parents during his early childhood, if true, would reasonably account for his having no papers, and for his inability to produce better evidence as to his birth and early childhood. Moy Suey v. United States (C. C. A.) 147 F. 697; United States v. Jung You (D. C.) 235 F. 1012. His evidence was not contradicted by any witness, and was not inherently unreasonable, and was corroborated by evidence that was convincing that he had been in New Orleans since he was about 12 years old.

In the case of Chin Hing v. United States, 24 F.(2d) 523, this court said: "It is only by arbitrarily rejecting the uncontradicted testimony that the order of deportation can be sustained. The same fairness and impartiality should govern in considering and weighing the testimony of persons of Chinese descent who claim to be citizens of this country, as are given to the testimony of any other class of witnesses. Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010; Yee Chung v. United States (C. C. A.) 243 F. 126. The case was not capable of any better proof than was made."

In view of the fact that the story of Lo Kee was not contradicted, was not inherently unreasonable, that Lo Kee was not in any way discredited as a witness, and adhered to the same story before the Commissioner and the District Judge, which he had told to his wife before their marriage; and in view of his long residence in New Orleans, which was satisfactorily proven, and that he had not been molested, while living there, by the immigration authorities, though he was engaged as a Chinese laborer—we think appellant sustained the burden of showing satisfactorily that he was lawfully in this country at the time of his arrest, and that the order of deportation was erroneous.

The judgment and order of the District Court is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.