YEE KING et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

No. 210.

ALIENS (§ 32*)—PROCEEDING FOR DEPORTATION OF CHINESE—REVIEW ON APPEAL—FINDINGS OF FACT.

A person of Chinese descent, arrested for being unlawfully in the United States, has the burden of proof to establish his claim that he was born in this country; and a finding against such claim by the commissioner affirmed by the District Court on additional testimony, will not be set aside by an appellate court, unless clearly against the weight of evidence.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

Citizenship of Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding for deportation of Yee King and Yee Sing under the Chinese exclusion act. From an order of the District Court, affirming an order of deportation made by the commissioner, defendants appeal. Affirmed.

The cases were originally heard before United States Commissioner Shields in the Southern district of New York, who found that the defendants were Chinese persons and laborers and were within the said Southern district without having the necessary certificates of residence. He also found that the testimony that they were born in the United States was unsatisfactory and unconvincing and ordered them deported to China.

Max J. Kohler, for appellants.

Henry A. Wise, U. S. Atty. (Addison S. Pratt, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The defendants attempted to prove that they were citizens of the United States. Yee King testified that he was born in San Francisco and lived there 11 years, when he came to New York where he remained for 3 years and then went to Tarrytown. His parents, he says, went to China when he was 9 years old and are there now, or at least they were there on the day when the testimony was taken, May 12, 1904.

The only knowledge he had as to the place of his birth was from his father, although it would seem that this information was actually derived from his uncle. He says, "My father told him so and my uncle told me so." His uncle also was in China at the time of the hearing. In fact, the entire family except the witness and a "sixth or seventh cousin" had returned to China. Young Sam testified that while he lived in San Francisco he saw the defendant when he was a few months old. When asked how he was able to recognize him

he answered, "I know him by his mentioning he is the son of Tseung Tuen Dow."

On the part of the government, Mr. Wiley, the officer who made the arrest in July, 1903, testified that at that time the defendant stated, in English, that he had no certificate, that he was born in the Sun Wee district of China, that he was 28 years of age and that he came to the United States about 2 years prior to July, 1903. He also said that his father had been in the United States and that his occupation was that of a laundry man.

The defendant was sworn and gave some additional testimony in the District Court.

In the case of Yee Sing, the testimony is substantially similar.

The commissioner who saw and heard the witnesses and the judge who saw and heard the defendants did not believe that they were born in this country. That the defendants are persons of Chinese descent is conceded, they produced no certificate, when apprehended, entitling them to remain in this country. The burden was, therefore, upon them to establish by affirmative proof their right to remain, and this they undertook to do by showing that they were American citizens. We do not pause to point out the inconsistencies and improbabilities of the testimony offered for the defendants; it is sufficient that the commissioner and the judge do not believe the defendants' contention that they were born in the United States. The question here is not what this court would have found had the testimony been originally taken before us. The question is—Was the finding of the commissioner and the judge so clearly against the weight of evidence as to justify us in disregarding it? The rule that this court will not reverse, in such circumstances, has been so frequently followed that we do not deem it necessary to do more than cite the more recent decisions on the subject. Hong Yon v. U. S., 164 Fed. 330, 90 C. C. A. 542; Yee Yet v. U. S. (C. C. A.) 175 Fed. 565.

It is argued that in 1892, when registration of Chinese laborers was required, the defendants were students between 11 and 12 years of age, the sons of restaurant keepers too young to require registration.

We do not discuss the interesting question of law thus presented as we are convinced that there are no facts upon which to base it. The witnesses presented by the defendant have been discredited. If their testimony is unworthy of belief upon the question of citizenship it cannot be received to sustain the defendants' right to remain here upon some other theory. We know that they were Chinese laborers, found here without a certificate, in the summer of 1903. This is all we know about them unless recourse is had to the testimony of witnesses who were regarded as unworthy of belief by the commissioner and the judge.

The facts shown are wholly insufficient to support their contention.

The judgments are affirmed.