### UNITED STATES v. CHIN TONG.

(Circuit Court of Appeals, Fifth Circuit. December 29, 1911.)

#### No. 2,181.

1. **ALIENS (§ 32\*)—CLAIM OF CITIZENSHIP—BURDEN OF PROOF.**
   Where defendant in Chinese deportation proceedings claimed to be a citizen of the United States, the burden was on him to establish the fact by competent proof.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 93-95; Dec. Dig. § 32.\*]

2. **ALIENS (§ 32\*)—DEPORTATION PROCEEDINGS—JURISDICTION—VENUE.**
   Act Cong. Sept. 13, 1888, c. 1015, § 13, 25 Stat. 479 (U. S. Comp. St. 1901, p. 1317), authorizes the arrest of any Chinese person found unlawfully in the United States on a warrant issued on a complaint filed by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any party on behalf of the United States by any justice, judge, or commissioner of any United States court, returnable before any justice, judge, or commissioner of a United States court or before any such court, and, when convicted on a hearing and found and adjudged to be not lawfully entitled to remain, he shall be removed to the country whence he came. Act March 3, 1901, c. 845, 31 Stat. 1093 (U. S. Comp. St. 1901, p. 1327), provides in section 1 that, if a Chinese person is arrested, the district attorney of the district in which the arrest is made may designate a commissioner in that district before whom such person shall be taken for hearing, and section 3 forbids the issuance of a warrant for violation of the Chinese exclusion laws, except on a sworn complaint of certain officers, unless the issuing of such warrant shall first be approved or requested in writing by the United States district attorney of the district in which issued. *Held*, that where a Chinese inspector in service at New Orleans went to Mississippi, and there found defendant, a Chinese person, at work in a laundry, arrested him without a warrant, took him to Louisiana, and there issued and served a warrant in deportation proceedings on him while he was in jail, based on a complaint made and executed in Louisiana, the Louisiana court had no jurisdiction to order his deportation; he being subject to arrest and arraignment only on a warrant procured on a sworn complaint issued out of the district in which the arrest was made.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

What Chinese persons are excluded from the United States. See note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Deportation proceedings by the United States against Chin Tong. From an order reversing a deportation order made by a commissioner for want of jurisdiction, the United States appeals. Affirmed.

L. H. Burns and W. J. Waguespack, Asst. U. S. Attys.

Before McCORMICK and SHELBY, Circuit Judges, and MAXEY, District Judge.

SHELBY, Circuit Judge. A Chinese inspector in the service of the government at New Orleans went to Hattiesburg, Miss., and there found the appellee, Chin Tong, at work in a laundry. The appellee was able to speak only a few words in English. After asking him a few questions, the inspector, as the inspector testified, "was satisfied he did not enter the country properly," and he at once arrested him without warrant, and, after placing him for a short time in the custody of the sheriff, brought him to the New Orleans immigration office. Arriving in New Orleans at 9 o'clock at night, the accused was examined by the inspector with the aid of an interpreter, and was immediately confined in the Parish prison. All this was done without affidavit, warrant, or commitment. The next day, August 31, 1910, the inspector made an affidavit before a United States commissioner of the Eastern District of Louisiana that on August 30, 1910, at Hattiesburg, Miss., the appellee, a Chinese person, was found to be unlawfully in the United States, and that he "is now within the jurisdiction of the court." Thereupon the commissioner issued a warrant to arrest the appellee, who was already in jail in New Orleans, having been brought from Hattiesburg, Miss., illegally and with-

out writ. The warrant describes the appellee as "late of Hattiesburg, in the state of Mississippi," and states that he is "now within the jurisdiction of the court." The command to the marshal is to arrest him "wherever found in your district." The writ would, of course, have been ineffectual if the inspector had not gone to Mississippi and arrested the appellee, and brought him into the Eastern District of Louisiana. On the hearing the commissioner ordered the appellee to "be deported to China," and to "be incarcerated without benefit of bail pending delays for appeal." It does not appear that on the hearing before the commissioner the accused was represented by counsel or had an opportunity to consult friends, but subsequently counsel appeared for him and objected to the jurisdiction of the commissioner, and took an appeal to the District Court of the United States for the Eastern District of Louisiana. The case was tried in the District Court on oral evidence there taken and on the written evidence previously taken before the commissioner. The District Court reversed the order of deportation made by the commissioner "for want of jurisdiction."

The case is here on appeal from the judgment of the District Court.

[1] The printed record does not contain the evidence taken before the District Court, but on the argument of the case it was referred to, and, by agreement, typewritten copies have been filed as a supplement to the record. The foregoing statement is condensed from both the original and supplemental record. On the examination of the appellee before the commissioner with the aid of an interpreter, he claimed to be a citizen of the United States; that is, he testified that he was born in San Francisco, in the United States, in November, 1880. The inspector testified that the appellee had previously said to him before his arrest at Hattiesburg that China was the place of his birth. The appellee explained the apparent contradiction by saying that he did not understand the question at Hattiesburg, that he did not know the meaning of the English word "birth." The record is sufficient to show that the appellee claimed to be a citizen of the United States, and, while the burden was on him to make such proof (Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121; Yee Ging v. United States [D. C.] 190 Fed. 270), he was entitled to an opportunity to make it.

[2] If it be conceded that the commissioner had jurisdiction notwithstanding the circumstances under which the appellee was arrested and transported from one state and district to another state and district, we are not satisfied from an examination of the entire record that he was afforded a fair opportunity to make such proof before the commissioner.

The merits of the case were not examined nor passed upon by the District Court; that court having reversed the order of deportation for want of jurisdiction in the commissioner.

It cannot be denied that the proceedings to deport a Chinese person, in which he is required to show his right to remain in this country, should be in substantial conformity to the laws of the United States. The learned United States attorneys contend that the regularity of

the proceedings and the jurisdiction of the commissioner are sustained by a part of section 13 of the act of September 13, 1888, which is as follows:

"That any Chinese person, or person of Chinese descent, found unlawfully in the United States, or its territories, may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, by any justice, judge, or commissioner of any United States court, returnable before any justice, judge, or commissioner of a United States court, or before any United States court, and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came." Act Sept. 13, 1888, c. 1015, 25 Stat. 476, 479 (U. S. Comp. St. 1901, p. 1312.)

It is admitted in the brief for the government that, without the authority of the section quoted, the arrests and trials of Chinese persons would be governed by the provisions of the statutes restricting the jurisdiction of the courts and its officers to their respective districts. It does not seem to us that this section would authorize a commissioner to issue a writ to arrest a Chinese person outside of the commissioner's district, or that it would authorize a Chinese inspector to arrest such person without a warrant in one district and carry him into another district for trial before a commissioner of the latter district. In May, 1893, the Supreme Court, construing the several Chinese exclusion acts passed before that date, said:

"The powers and duties of the executive officers named being ordinarily limited to their own districts, the reasonable inference is that they must take him (the arrested Chinese laborer) before a judge within the same judicial district; and such was the course pursued in the cases before us." Fong Yue Ting v. United States, 149 U. S. 698, 728, 13 Sup. Ct. 1016, 1028 (37 L. Ed. 905).

But, if the act were susceptible of such construction, it would be inconsistent with a later act. The act of March 3, 1901 (31 Stat. 1093, c. 845 [U. S. Comp. St. 1901, p. 1327]), copied in the margin,[1] seems to restrict the activities of the United States attorneys and the authority

[1] "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that it shall be lawful for the district attorney of the district in which any Chinese person may be arrested for being found unlawfully within the United States, or having unlawfully entered the United States, to designate the United States commissioner within such district before whom such Chinese person shall be taken for hearing.

"Sec. 2. That a United States commissioner shall be entitled to receive a fee of five dollars for hearing and deciding a case arising under the Chinese exclusion laws.

"Sec. 3. That no warrant of arrest for violations of the Chinese exclusion laws shall be issued by United States commissioners excepting upon the sworn complaint of a United States district attorney, assistant United States district attorney, collector, deputy collector, or inspector of customs, immigration inspector, United States marshal, or deputy United States marshal, or Chinese inspector, unless the issuing of such warrant of arrest shall first be approved or requested in writing by the United States district attorney of the district in which issued.

"Sec. 4. That this act shall take effect immediately.

"Approved March 3, 1901."

of the United States commissioners in the enforcement of the deportation laws to their respective districts.

By the first section of the act, if a Chinese person is arrested, it is the district attorney of the district in which the arrest is made who may designate a commissioner in that district before whom such Chinese person shall be taken for a hearing. The third section forbids the issuance of a warrant for a violation of the Chinese exclusion laws except on the sworn complaint of certain officers, "unless the issuing of such warrant of arrest shall first be approved or requested in writing by the United States district attorney of the district in which issued." When the Chinese inspector desired to arrest a Chinese person at Hattiesburg, Miss., and a resident of that town, by proceedings before a United States commissioner, he should have procured by a sworn complaint a warrant from a United States commissioner of the Southern District of Mississippi, and the United States attorney of that district would have had authority to designate a commissioner in that district before whom such person could have been carried for a hearing.

The appellee claims to be a citizen of the United States. But, conceding that he is an alien, he is under the protection of the law of the land. He is entitled at least to the benefit of all laws for the security of his person from assaults and illegal arrests. It is not competent for a Chinese inspector to arbitrarily arrest an alien without warrant and transport him from the district in which he lives to another state and district, and to there arraign him before a commissioner and cause him to be deported. The accused is entitled to full opportunity to be heard upon the question of his right to remain in the United States. He cannot be said to have had full opportunity to present his case when he is carried from the place of his residence to a distant district and state and tried without an opportunity to consult friends or counsel. And, besides, the statute of March 3, 1901, supra, indicates that it is the intention of Congress that he should be arrested only on a warrant procured by sworn complaint, and that he shall be arraigned before a commissioner of the district in which the arrest is made.

The judgment entered in the District Court does not prevent, but it requires, the officers charged with the enforcement of the Chinese exclusion laws to follow in this case the procedure prescribed by the statute. Its only effect is to require conformity to the statute, and to prevent a practice that would lead to injustice and oppression.

Without prejudice to the right of the government to proceed according to law, or as herein indicated, the judgment of the District Court is:

Affirmed.