## CHIN HUNG v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. February 8, 1917.)

Nos. 2427–2430.

1. ALIENS ⬅32(12)—EXCLUSION OF CHINESE—DEPORTATION PROCEEDINGS—EVIDENCE.

In proceedings for the deportation of Chinese persons, under Chinese Exclusion Act May 5, 1892, c. 60, § 3, 27 Stat. 25 (Comp. St. 1913, § 4317), providing that Chinese persons arrested under the act must establish their right to remain in the country by affirmative proof to the satisfaction of the justice, judge, or commissioner, judgment of the commissioner and of the District Court, ordering deportation, *held* not so clearly against the evidence adduced by the Chinese as to their right to remain as to warrant reversal thereof.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95.]

2. ALIENS ⬅32(12)—EXCLUSION OF CHINESE—DEPORTATION PROCEEDINGS—REVIEW—FINDINGS BY COMMISSIONER AND COURT.

Where the commissioner, who heard the testimony and saw the witnesses, and the District Court, were both dissatisfied with the testimony of the Chinese person, whose right to remain in the country was questioned, and of his Chinese witnesses, their judgments for deportation will not be reversed on appeal, though the facts testified to established a right to remain.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95.]

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Four separate deportation proceedings by the United States against Chin Hung, against Young Sing Hong, against Yuen Yuen, and against

Young Toy. From orders of the District Court for deportation of the defendants, they appeal. Affirmed.

Benjamin C. Bachrach, of Chicago, Ill., for appellants.

Charles F. Clyne and Benjamin P. Epstein, both of Chicago, Ill., for the United States.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge. These are four separate appeals from orders of deportation. Only one question is presented to us in the four cases, viz.: Were the judgments of the commissioner and the district court, ordering the appellants, Chinese laborers, to be deported, clearly against the evidence adduced by them to show that they were entitled to remain in this country?

Section 3 of the Chinese Exclusion Act (27 Stat. 25, Comp. St. 1901, p. 1320) provides that Chinese persons arrested under the provisions of the act must establish their right to remain in the United States by affirmative proof, to the satisfaction of a justice, judge, or commissioner.

[1] The appellant Chin Hung, according to the testimony produced by him, was born in China and came to the United States when he was 5 years old. He did not register under the Act Nov. 3, 1893, c. 14, 28 Stat. 7. He was about 15 years of age when by said act all Chinese laborers lawfully in the United States were required to register. He bases his right to remain here upon his claimed status as the minor son of a regularly domiciled Chinese merchant in San Francisco at the time fixed for registration under said act. Whether his father resided in the United States at that time seems to be a question of considerable doubt. In his examination by an immigrant inspector upon his arrest, appellant gave the time of his father's permanent return to China as of a date 3 or 4 years prior to the time for registration. He seems to have been positive of the date of his father's departure, since he repeated it three times in the course of his examination. Before the commissioner, however, where he was represented by counsel, he repudiated his former statements in that respect and claimed that his father returned to China several years after the time for registration. He produced two Chinese witnesses to corroborate his testimony. Neither of them was in San Francisco during the period of registration. One was living in Philadelphia and the other in Chicago. One of them testified that he went to San Francisco in the year following the period of registration and saw appellant's father there, and the other testified that he went to San Francisco 2 or 3 years later and the father was then in China.

The other three appellants, Young Sing Hong, Yuen Yuen, and Young Toy, claim to have been born in the United States.

Young Sing Hong testified that he did not know where he was born, whether in China or the United States; that his father died when appellant was 10 years old; that he remembered none of the incidents of his life up to the time he was 12 years old; that after his arrest he met two friends who told him that they knew him and had known his father. They were produced as witnesses at the hearing before the

commissioner. They testified that they had known appellant's father in Portland, Or., and that appellant was born there.

Appellant Yuen Yuen on his arrest and examination by an immigrant inspector answered all questions as to his age, place of birth, names of parents, etc., by "I don't know," or "I don't remember." At the hearing before the commissioner he stated that he refused to give information to the inspector, upon the advice of a friend. He then testified that he was 19 years old and that he was born in San Francisco, at 28 Washington alley; that his father returned to China shortly after the San Francisco earthquake; that his father died a few months after the earthquake; that he, appellant, lived in Oakland, Cal., for 3 or 4 months after the earthquake and then his father sent him, at the age of 9 years, to Chicago with an uncle in order that he might find work, and that he has lived in Chicago ever since.

Two Chinese witnesses appeared in appellant Yuen's behalf. Lee Bong testified that he conducted a boarding house in San Francisco up until the time of the earthquake and purchased provisions from the store of appellant's father; that "his father told me about the boy"; that he attended the "birth feast"; that he saw appellant frequently in San Francisco until he was 8 or 9 years old; that he next saw him in Chicago at the age of 19 years; that he did not recognize appellant until the latter first recognized witness and that he was able to say that appellant was the same boy he knew at San Francisco; that witness had been in Chicago only about 6 months at the time of the trial; that he had been looking around for a place in which to open a restaurant during this time and had not worked at anything else nor found a suitable place for a restaurant; that he knew nothing concerning appellant's occupation, place of residence, etc., in Chicago, but was familiar with the details of his life in San Francisco—the street number where he was born, etc., but was unable to give the street on which was located the cigar store in which he himself had worked for 10 years. He further testified that he had lived in San Francisco continuously from the time he arrived there until he came to Chicago. In the certificate of registration produced by him his occupation was given as that of a farmer, and his residence San Jose. He then stated that he had worked on a farm for about a year.

Yee See testified that he worked in a laundry in San Francisco and bought provisions from the store of appellant's father; that he saw the father carrying appellant in his arms when a baby and the father told witness it was his boy; that he saw appellant frequently in his father's store until 7 or 8 years of age; that 8 or 9 years later when witness came to Chicago appellant met him and recognized him and called him by name and that he then recognized appellant.

Appellant Young Toy testified before an immigrant inspector that he was 28 years old and was born in San Francisco; that his mother died there when he was 2 years old, his father a year later; that he never went to school at San Francisco; that he was cared for by relatives until 14 years of age when he left, after the San Francisco fire, and came to Chicago where he has been living ever since; that he could not remember any of the streets where he lived in San Francisco;

that before giving any further testimony he wanted to see Frank Moy. When his counsel examined him at the hearing before the commissioner he testified that he came to Chicago at the age of 14 years, with his father; that he began working in a laundry as soon as he came to Chicago. On cross-examination he stated that he made a mistake in telling the immigration inspector that his father was dead; that on arriving in Chicago with his father he stayed in the laundry where his father worked, for 5 years, but he did not himself work; that he was able to give the names of a number of streets in San Francisco, which he did.

Witness George Wing testified that he was born in San Francisco and went to school there with appellant, who was a little older than witness; that he last saw appellant in San Francisco 3 or 4 years before the earthquake, and that appellant left there before the earthquake, and then saw him again in 1914 in Chicago.

Witness Lai Kai testified that he was a Chinese actor by occupation; that he had known appellant for more than 20 years; knew him when he lived at 726 Jackson street, San Francisco, with his parents; that he was in San Francisco when appellant was born, and attended the "birth feast," and remembered the names of others who were at that celebration, giving their names; that he saw appellant frequently in San Francisco until he was 10 years old, and then saw him again at Chicago, 13 or 14 years later. On cross-examination he stated that he had been in Chicago 6 months looking for a place as an actor in Chinese theaters; that there are no Chinese theaters in Chicago but he intended to organize one, and that although he had not yet found a suitable location for a theater his friends were looking about for a place; that appellant was not in San Francisco at the time of the earthquake; that he did not remember the year when appellant left San Francisco, but that it was when he was 13 or 14 years old.

[2] The decisions applicable to the several cases above stated are voluminous and emphatic.

In United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890; and in Chin Bak Kan v. United States, 186 U. S. 200, 22 Sup. Ct. 891, 46 L. Ed. 1121, it was held that a child born in the United States of parents of Chinese descent, who, at the time of his birth are subjects of the emperor of China, but have a permanent domicile and residence in the United States and are there carrying on business and are not employed in any diplomatic or official capacity under the emperor of China, becomes at the time of his birth a citizen of the United States.

In Yee Yet v. United States, 175 Fed. 565, 99 C. C. A. 187, the Circuit Court of Appeals for the second circuit in a per curiam opinion holds that where the right of persons of the Chinese race, who entered the United States surreptitiously, to remain, depends entirely on the question of fact whether they were natives of this country, the decision of the District Court, which heard the witnesses testify, will not be reversed on appeal.

Chew Hing v. United States, 133 Fed. 227, 66 C. C. A. 281, upholds the judgment of the District Court affirming an order of a commission-

er for the deportation of a Chinese person against his claim that he was born in the United States, which was supported by the testimony of himself and two other Chinese witnesses, but was contradicted by a prior admission of defendant.

In Eng Choy v. United States, 175 Fed. 566, 99 C. C. A. 188, the Circuit Court of Appeals for the Eighth Circuit held that the finding of the commissioner and District Judge in a deportation case is presumptively correct; and the appellate court after an examination of the evidence finds the judgments below to be based on fact.

In Yee King v. United States, 179 Fed. 368, 102 C. C. A. 646, Circuit Judge Coxe says:

"We do not pause to point out the inconsistencies and improbabilities of the testimony offered for the defendants; it is sufficient that the commissioner and the judge do not believe the defendants' contention that they were born in the United States. The question here is not what this court would have found had the testimony been originally taken before us. The question is: Was the finding of the commissioner and the judge so clearly against the weight of evidence as to justify us in disregarding it? The rule that this court will not reverse, in such circumstances, has been so frequently followed that we do deem it necessary to do more than cite the more recent decisions on the subject. Hong Yon v. U. S., 164 Fed. 330 [90 C. C. A. 542]; Yee Yet v. U. S., 175 Fed. 565 [99 C. C. A. 187]."

In Lee Sing Far v. United States, 94 Fed. 834, 35 C. C. A. 327 (C. C. A. 9th Cir.), the court says:

"The question which we are called upon to decide is not whether there was any evidence tending to establish the fact that appellant was born in the United States, but is whether the evidence is so clear and satisfactory upon that point as to authorize this court to say that the court erred in refusing her to land, and in entering judgment that she be remanded. * * * It does not necessarily follow that, because four witnesses have testified positively that she was born in San Francisco, there being no witness to the contrary, their statements * * * must be accepted as true. If such a rule were adopted and followed, there would be no more Chinese remanded in such cases. It is safe to say that the United States is powerless to make any proof in any case as to the place of birth of Chinese children. * * * If, from the whole testimony, the court is not satisfied that the witnesses have told the truth, it has the right to exclude their testimony, and remand the petitioner, because the evidence * * * is insufficient to convince the mind of the court that the petitioner is entitled to land in the United States."

The District Court in United States v. Chu King Foon (D. C.) 179 Fed. 995, held that the commissioner in a Chinese deportation proceeding need not believe a Chinese witness when he sees him and has opportunity to judge of his credibility. And in United States v. Lee Huen (D. C.) 118 Fed. 442, it is said:

"The defendant is not required to satisfy the prejudiced, the capricious, the unreasonable, or the arbitrary mind; but he must satisfy the judgment of a reasonable man, acting honestly and with good judgment, and without prejudice or bias. The commissioner may not arbitrarily or capriciously, or against reasonable, unimpeached and credible evidence, containing no element of inherent improbability, and which is uncontradicted in its material points, and susceptible of but one fair construction, refuse to be satisfied. When clearly, from the evidence, the judicial mind ought to be satisfied, in the eye of the law it is satisfied."

"By 'satisfactory evidence,' which is sometimes called 'sufficient evidence,'" says Greenleaf (1 Greenl. Ev. § 2), "is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt."

This court, in Moy Guey Lum v. United States, 211 Fed. 91, 127 C. C. A. 515, said:

"The decisions are numerous to the effect that in this class of cases, where the facts have been already determined by two judgments below, the appellate court cannot properly re-examine them. This language is used by the United States Supreme Court in Chin Bak Kan v. United States, supra. Where the question is one of fact as to whether the respondent is a native of this country, it has been held in some of the federal courts that the decision of the District Court will not be reversed on appeal"—citing cases.

In Wong Keow v. United States, 215 Fed. 95, 131 C. C. A. 403, we affirmed the order of deportation below where the commissioner and the District Court were dissatisfied with the hazy, contradictory, and improbable testimony of the appellant Chinese person and his Chinese witnesses.

In the case of each of these appellants the commissioner was not satisfied that the proof offered was of such an affirmative character as to entitle appellants to remain in this country. Taking into consideration the fact that he saw and heard the witnesses testify and was therefore able to judge of their credibility, and also the inconsistencies and improbabilities in the testimony shown in the record, we are not able to say that the commissioner's action in any of said cases was arbitrarily exercised. The evidence in the record does not convince us that the judgments of the commissioner and the District Court were unwarranted.

The judgment in each case is therefore affirmed.