**JUNG SEE v. NASH, Inspector, etc., et al.**

(Circuit Court of Appeals, Eighth Circuit. March 16, 1925.)

No. 6656.

1. **Aliens 32(2, 13)—Chinese, who had admitted entering surreptitiously, not entitled to judicial investigation of claim of citizenship; but department had jurisdiction.**

A person who had admitted that he was of Chinese descent, was born in China, was a resident of Canada, and entered the United States surreptitiously, was not entitled to a judicial investigation of his subsequent claim that he was an American citizen, by virtue of his father being born in the United States, made in proceeding for his removal before the Department of Labor; but the department had the right to arrest him, and jurisdiction to determine the question of citizenship, and if, in such proceeding, he was afforded a fair, full, and impartial hearing, decision of the department, supported by substantial evidence, was final and conclusive.

2. **Aliens 32(13) — Hearing in deportation proceeding not unfair, because inspector attached to report an official record from another office impeaching a witness for defendant.**

A hearing in proceeding to deport a Chinese person was not unfair merely because the inspector obtained and attached to his report, recommending deportation, a transcript of an official record from another office, not introduced in evidence, impeaching a witness for defendant; Secretary of Labor having right to take cognizance of the official records of any office of the Department of Labor.

3. **Habeas corpus 113(5½)—Appellant, by failure at trial below to attack record, held precluded from urging hearing in deportation proceeding was unfair.**

Appellant in habeas corpus is precluded from urging that the hearing before the Department of Labor for his deportation, as a Chinese person not entitled to be in the country, was unfair, because of record from another office impeaching his witness, obtained by the inspector and attached to his report, though not introduced in evidence before him; appellant not having attacked the correctness of the record, or offered any explanation of the impeachment of his witness thereby, at the trial before the District Court on the merits.

4. **Habeas corpus 113(5½)—By reason of stipulation for court hearing on record in deportation proceeding before department, alien may not complain hearing was not de novo.**

One sought to be deported as Chinese person not entitled to be in the country, even if entitled to a judicial hearing de novo on the merits of his claim of American citizenship, may not complain, where, after court below had set the cause for trial on the merits, he stipulated that hearing should be on the record in the proceedings before the Department of Labor, and chose to introduce no further evidence, and the court so passed on the merits of his claim and decided against him.

5. **Aliens 32(5)—Burden of proving American citizenship on Chinese person sought to be deported.**

Under Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), and Act May 5, 1892, § 3 (Comp. St. § 4317), a Chinese person sought to be deported, admitting that he was of Chinese descent, was born in China, and entered the United States surreptitiously, has the burden of proving his American citizenship.

6. **Aliens 32(10)—Chinese person properly ordered deported to China, instead of to Canada.**

Under Act May 5, 1892, § 2 (Comp. St. § 4316) superseding Act Sept. 13, 1888, § 13 (Comp. St. § 4313), a Chinese person adjudged not to be lawfully entitled to be or remain in the United States is properly ordered deported to China, rather than to Canada, from which he entered.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Habeas corpus proceeding by Jung See against James T. H. Nash, Inspector in Charge, United States Immigration Service, and others. From an order discharging the writ, petitioner appeals. Affirmed.

Charles A. Lich, of St. Louis, Mo. (Lich & Miller, of St. Louis, Mo., on the brief), for appellant.

Allen Curry, U. S. Atty., and Carroll W. Harlan, Asst. U. S. Atty., both of St. Louis, Mo., for appellees.

Before KENYON, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

PHILLIPS, District Judge. This is an appeal from an order discharging a writ of habeas corpus.

Jung See, hereinafter called appellant, filed in the District Court of the United States for the Eastern Division of the Eastern District of Missouri his petition for a writ of habeas corpus, wherein he alleged: That he was unlawfully deprived of his liberty in the city of St. Louis, Mo., by James T. H. Nash, inspector in charge of the United States Immigration Service, and B. E. Barnes, immigrant inspector, under warrants of arrest and deportation. He further alleged therein that such warrants were void for the following reasons: That the appellant was a citizen of the United States; that the evidence at the hearing before the immigration authorities showed that appellant was the son of a native born citizen of the United States; that there was no substantial evidence at such hearing that appellant was a Chinese subject or an alien; that the charges upon which it was sought to deport appellant were not supported by any evidence; that the hearing before the immigration authorities was unfair and illegal; that the appellant was entitled to a judicial hearing on the question of his citizenship; that the Department of Labor was without jurisdiction to hear that question; and that the order of deportation to China was illegal for the reason that appellant, after having become a resident of Canada, came from Canada into the United States. A writ of habeas corpus was issued as prayed for in the petition.

To this writ Nash, the inspector in charge, filed his return in which he set up and alleged: That he was the inspector in charge of the St. Louis office of the United States Immigration Service; that appellant was an alien and a citizen and subject of China; that on or about November 1, 1922, appellant surreptitiously entered the United States near the port of Detroit, Mich., and deliberately evaded the inspection required by law; that appellant was apprehended and arrested in pursuance of a warrant issued by the Assistant Secretary of Labor December 4, 1922; that a hearing on the matter was held before Nash, inspector, on February 7, 1923; that at said hearing appellant was present in person and was also represented by counsel and was given a full, fair, and complete hearing as required by law; that at the close of the hearing the record, including the evidence on which the warrant was issued, the testimony produced at the hearing and the brief of attorney for appellant, were submitted to the Secretary of Labor; and that after due consideration thereof the Secretary of Labor decided that appellant should be deported, and issued a warrant of deportation dated June 1, 1923. The return further specifically denied the allegations of the petition and prayed that the writ be discharged. The warrant of deportation and an authenticated copy of the entire proceedings had before the Department of Labor were attached to the return.

The appellant filed a reply, in which he generally denied the allegations of the return.

The court ordered the matter set down for hearing on the merits, at St. Louis, Mo., on September 17, 1923.

Whereupon counsel for the parties entered into and filed in the cause the following stipulation:

"It is hereby stipulated and agreed by the parties to this cause that the same may be taken as submitted by the court on the pleadings and the file of the Immigration Bureau which is attached to respondent's return as an exhibit, and upon briefs to be submitted [to] the petitioner and respondent."

From the authenticated transcript of the proceedings before the Department of Labor, the following facts appear:

Appellant was arrested and brought before Nash, inspector in charge, at St. Louis, on December 2, 1922; Nash informed appellant that he was an immigration inspector, that he wished to take a statement from appellant, that such statement must be voluntary, and that it might be used either for or against him, and asked him if he was willing to make a sworn statement. Appellant replied in the affirmative. Whereupon appellant made a statement substantially as follows: That his name was Jung See; that he was 35 years of age; that he was born at Duck Jow village, Southwest district, China; that he entered Canada about 1917 at Vancouver, and paid $500 head tax at the time he entered; that he entered the United States at Detroit, Mich., three or four weeks prior to December 2, 1922; that he traveled by railroad train from Toronto to Windsor, Canada; that he was taken across the river from Windsor to Detroit by a white man in a rowboat about 7 o'clock at night; that he paid the white man $130; that he was not inspected when he entered the United States; that he traveled by railroad train from De-

troit to St. Louis; and that he was a laundryman by occupation.

Thereupon application was made for a warrant of arrest under section 19 of the Act of February 5, 1917, 39 Stat. 889 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj). This application charged that appellant entered the United States in violation of section 7 of the Chinese Exclusion Act of September 13, 1888, 25 Stat. 477 (Comp. St. § 4308), and rule 1, Chinese Rules; that he was found in the United States in violation of section 6 of the Chinese Exclusion Act of May 5, 1892, as amended by the Act of November 3, 1893 (27 Stat. 25; 28 Stat. 7 [Comp. St. § 4320]); that he was a Chinese laborer not in possession of a certificate of residence, and was a person likely to become a public charge at the time of his entry; and that he entered without inspection. To this was attached the above-mentioned statement of appellant, taken on December 2, 1922, and the report of the inspector who arrested him.

The matter was called for hearing before Nash, inspector, December 7, 1922. It was continued to February 7, 1923, to afford appellant time to secure counsel to represent him. On February 7, 1923, the matter came on for hearing. Appellant was present in person, and was represented by Charles A. Lich, an attorney at law. Appellant testified to substantially the same facts as above set out in his statement of December 2, 1922, and in addition thereto that his father, Jung Hing Fun, was born in the United States, and therefore appellant was an American citizen, and that his father left China when appellant was a small baby, came to the United States, and there continuously remained until his death in St. Louis about two years prior to the date of the hearing.

Appellant presented also as witnesses Jung Dok Hung and Jung Chung Gan. Hung testified that he was a Chinaman 72 years old; that he came to the United States in 1868; that he entered at San Francisco, Cal.; that he went back to China, first in 1890, and again in 1912; that he was pre-investigated at Cleveland, Ohio; that he sailed from Seattle, and returned through Seattle; that he knew appellant and his father and mother; that appellant's father's name was Jung Hing Fun; that the latter was born at 714 Commercial street, San Francisco, Cal.; and that he saw appellant in China when he was there in 1890. Jung Chung Gan testified he was 51 years of age; that he had lived in St. Louis 15 or 16 years; that he came to the United States when he

4 F.(2d)—41

was 17 years old; that he was about 2 years younger than appellant's father; that he had made a trip to China about 23 or 24 years prior to the date of the hearing; that he knew appellant and appellant's father; that he was present at a head-shaving feast at the time of appellant's birth; and that appellant's father was born in America.

Whereupon the appellant rested his case.

The record of the testimony of Jung Dok Hung in connection with his application for a return certificate on November 29, and December 9, 1911, at Cleveland, Ohio, was secured by Inspector Nash from the official files of the Seattle office. This record shows that Hung testified at Cleveland that he was then 56 years of age; that he was born in 1855; that he had been in the United States 38 years, and had never returned to China during the 38 years he had been in the United States.

Inspector Nash made his findings and report to the Commissioner General of Immigration at Washington, D. C. To the same was attached the record of the testimony of Jung Dok Hung taken at Cleveland in 1911. It does not appear whether appellant and his witnesses were confronted with this transcript or not. We may assume that they were not. Inspector Nash recommended an order of deportation. The matter came before the Board of Review on May 10, 1923. Appellant, through his counsel, filed a written brief. The Board of Review recommended deportation to China. The Secretary of Labor entered an order accordingly, and a warrant of deportation was issued on June 1, 1923.

The learned trial judge treated the matter as submitted on the merits under the stipulation above set out, proceeded to examine the pleadings and file of the Immigration Bureau, found that the appellant was not a citizen of the United States, that he was unlawfully within the United States, and subject to deportation under the Act of February 5, 1917, 39 Stat. 889 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), and entered the order discharging the writ from which this appeal is prosecuted.

Appellant makes four principal contentions:

First, that there was no substantial evidence to sustain the order and warrant of deportation; second, that the appellant made a bona fide claim to citizenship, which entitled him to a judicial hearing, and deprived the Department of Labor of jurisdiction to hear the matter; third, that the hearing was not full, fair, and impartial;

fourth, that the order of deportation was void, because it ordered petitioner deported to China.

[1] Was the appellant entitled to a judicial hearing, and was the Department of Labor without jurisdiction to hear the matter? Appellant contends the above questions should be answered in the affirmative, under the authority of Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938. The facts and the precise question presented in that case clearly appear from the opinion at page 282 (42 S. Ct. 494), from which we quote as follows:

"They [the alleged Chinese aliens] insist that, since they claim to be citizens, Congress was without power to authorize their deportation by executive order. If at the time of the arrest they had been in legal contemplation without the borders of the United States, seeking entry, the mere fact that they claimed to be citizens would not have entitled them under the Constitution to a judicial hearing. United States v. Ju Toy, 198 U. S. 253; Tang Tun v. Edsell, 223 U. S. 673. But they were not in the position of persons stopped at the border when seeking to enter this country. Nor are they in the position of persons who entered surreptitiously. See United States v. Wong You, 223 U. S. 67. They arrived at San Francisco, a regularly designated port of entry, were duly taken to the immigration station, and, after a protracted personal examination, supplemented by the hearing of witnesses and the examination of reports of immigration officials, were ordered admitted as citizens. Then they applied for and received their certificates of identity. Fifteen months after the entry of one and six months after the entry of the other, both were arrested, on the warrant of the Secretary of Labor, in Arizona, where they were then living. The constitutional question presented as to them is: May a resident of the United States, who claims to be a citizen, be arrested and deported on executive order? The proceeding is obviously not void ab initio. United States v. Sing Tuck, 194 U. S. 161. But these petitioners did not merely assert a claim of citizenship. They supported the claim by evidence sufficient, if believed, to entitle them to a finding of citizenship. The precise question is: Does the claim of citizenship by a resident, so supported both before the immigration officer and upon petition for a writ of habeas corpus, entitle him to a judicial trial of this claim?"

The facts in the instant case are material-ly different and present a substantially different question.

At a hearing before the inspector, appellant admitted that he was born in China, that he had lived in Canada between 4 and 5 years immediately prior to his entry into the United States, and that he entered the United States for the first time at Detroit surreptitiously and without inspection about 4 weeks prior to his arrest. If he had sought entrance into the United States at a regular port of entry and made claim to the immigration officials that he was an American citizen, he would not have been entitled under the Constitution to a judicial hearing upon that issue; but the executive branch of the government would have had jurisdiction upon a fair and impartial hearing to determine the question. U. S. v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; Tang Tun v. Edsell, 223 U. S. 673, 675, 32 S. Ct. 359, 56 L. Ed. 606; Chin Yow v. U. S., 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 S. Ct. 734, 56 L. Ed. 1165; Ng Fung Ho v. White, 259 U. S. 276, 284, 42 S. Ct. 492, 66 L. Ed. 938. Is a person who enters the United States, in violation of law, in the nighttime, with the aid of a smuggler, entitled to any different hearing upon his claim of American citizenship, from one who seeks entry at a properly designated port through regular channels? Does the violation of the law by the former place him in a better position than the latter? We cannot think so. We are not unmindful that the Circuit Court of Appeals of the Sixth Circuit in Chin Hoy v. U. S., 293 F. 750, held, in executive proceedings for deportation, under section 19 of the Immigration Act of February 5, 1917, 39 Stat. 889 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), that the defendants, who made a claim of citizenship, supported by substantial evidence showing that the claim was not frivolous, were entitled to habeas corpus to have their claim judicially determined, notwithstanding they had entered the United States surreptitiously.

On the other hand, in the case of Sit Sing Kum v. U. S., 277 F. 191, the Circuit Court of Appeals for the Second Circuit, under a similar state of facts, reached the opposite conclusion, and held that the Immigration Act of February 5, 1917, 39 Stat. 889 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), applied, that the order of deportation made by the Secretary of Labor upon a fair and impartial hearing was final, and that the persons sought

to be deported were not entitled to a judicial investigation of their claims of citizenship.

We conclude that appellant, having admitted he was of Chinese descent, was born in China, was a resident of Canada, and entered the United States surreptitiously,. was not entitled to a judicial investigation of his claim that he was an American citizen, by virtue of the fact that his father was born in the United. States, made in proceedings for his removal before the Department of Labor, and that the Department of Labor had the right to arrest him, and jurisdiction to hear and determine the question of his citizenship, and that if, at such proceeding, he was afforded a fair, full, and impartial hearing, the decision of that department of the government, supported by substantial evidence, was final and conclusive.

[2, 3] Was the hearing before the inspector in charge full, fair, and impartial? Appellant's contention that it was not is predicated upon the fact that the inspector secured from the official files in the Seattle office, and attached to his findings, the record of the evidence of the witness, Jung Dok Hung, taken at Cleveland in 1911.

"A hearing granted does not cease to be fair merely because rules of evidence and of procedure applicable in judicial proceedings have not been strictly followed by the executive, or because some evidence has been improperly rejected or received." Bilokumsky v. Tod, 263 U. S. 149, 157, 44 S. Ct. 54, 68 L. Ed. 221.

In the case of Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606, Tang Tun, a Chinese person, after his application for entry into the United States had been denied by the immigration authorities, sought his discharge on a writ of habeas corpus. At the hearing before the immigration authorities, Tang Tun asserted that he had been admitted to the United States in 1897 after examination by the collector of customs, and produced a copy of his identification papers, bearing what purported to be the indorsement of the collector as to the fact of admission, and showing that he had arrived at Tacoma on the steamer Tacoma April 10, 1897, and that he had been admitted April 20, 1897. The inspector found, however, that in the records of the customs office at Port Townsend, Wash., the port at which Tang Tun had arrived in 1897, it was stated he had been held at Vancouver, B. C., and rejected on May 25, 1897. In transmitting to the Secretary of Commerce and Labor the record of the hearing upon the application for entry, the inspector reviewed the case, and stated the result of his investigation of official files among the customs records, which disclosed facts having a material bearing upon the question of whether or not Tang Tun was rejected in 1897. The inspector also transmitted other official files to the Secretary. In the habeas corpus proceeding, Tang Tun contended that the above action of the inspector, in stating the result of his investigation of official files, and in forwarding other official files to the Secretary, rendered the proceeding unfair.

In passing on these contentions, the Supreme Court said:

"The writ of habeas corpus was granted in September, 1906. For some reason which the record does not disclose the case was not brought on for hearing until January 20, 1908, when an order was made for the taking of testimony. Then, instead of adducing evidence to show that these statements of the inspector were false or misleading, it was stipulated (on February 26, 1908) that the matter should be heard upon the record, including the papers which were submitted to the Secretary, and that the writ should be dismissed, if the court, upon this record, should find that there had been no abuse of discretion. Had there been ground for saying that the inspector had misled the Secretary by misrepresenting the records to which he referred, or by false assertions as to the matters of fact disclosed by his inquiries, it cannot be doubted that this would have been shown, as there was abundant time for full consideration and inquiry. In these circumstances it cannot be said that the inspector, in stating the result of his investigations, in commenting upon the practice which had obtained in dealing with Chinese applicants for admission, and in referring to the entries in the official records, was guilty of unfair or improper conduct.

"Complaint is also made of the action of the inspector in forwarding to the Secretary the papers in the cases of other Chinese persons who arrived on the steamer Tacoma with Tang Tun on April 10, 1897, some of whom had identification papers similar to those of Tang Tun with the indorsement of the collector, purporting to show their admission, in conflict with the office records. The inspector called attention to the fact that in certain cases, after inquiry before the United States commissioner, and despite the possession of such identification papers, deportation had been ordered, and also that it appeared that all the applicants describ-

ed in the papers forwarded to the Secretary had been held in British Columbia pending decision. The contents of these papers are not printed in the transcript of record, but we must assume from the description that they were from the official files. Of these the Secretary might at all times take cognizance, and it would be extraordinary indeed to impute bad faith or improper conduct to the executive officers, because they examined the records or acquainted themselves with former official action."

In respect to the complaint here made by appellant that the hearing before the Department of Labor was unfair, the instant case and the Tang Tun Case are parallel. The decision in the Tang Tun Case is controlling, and requires us to hold that the Secretary had the right to take cognizance of the official records of the Department of Labor at Seattle, and that the appellant, having failed to attack the correctness of those records, and having failed to offer any explanation of the impeachment of his witness by those records, at the trial before the District Court on the merits, is now precluded from urging that the hearing before the Department of Labor was unfair or improper.

[4] There is another complete answer to the contentions of the appellant above considered. If he was entitled to a judicial hearing on the question of citizenship, and if the hearing before the Department of Labor was unfair, and if the lower court had so found on both points, it would have been the duty of such court, under the settled practice in such cases, to have proceeded to hear the matter de novo on the merits. Ng Fung Ho v. White, 259 U. S. 276, 285, 42 S. Ct. 492, 66 L. Ed. 938; Chin Yow v. U. S., 208 U. S. 8, 13;[1] Ungar v. Seaman, Inspector, and Husman v. Seaman, Inspector (C. C. A. 8) 4 F.(2d) 80; Jouras v. Allen, Inspector (C. C. A. 8) 222 F. 756, 759, 138 C. C. A. 210; Sibray, Inspector, v. U. S. ex rel. Plichta (C. C. A. 3) 282 F. 795, 798. After the pleadings were made up, the lower court set the cause for trial on the merits. Appellant saw fit to stipulate that the hearing should be upon the record in the proceedings before the Department of Labor, and chose to introduce no further evidence. The lower court passed upon the merits of appellant's contention as to citizenship, and decided adversely to him.

[5] Appellant further contends that, notwithstanding the admissions above referred to, made by appellant, the burden of proof was upon the government to show that ap-

pellant was not an American citizen, and to show that he was a Chinese person unlawfully within the United States, and that the order of removal was not supported by substantial evidence. In support of this contention, counsel for appellant cite Moy Suey v. U. S. (C. C. A. 7) 147 F. 697, 78 C. C. A. 85, and Gee Cue Beng v. U. S. (C. C. A. 5) 184 F. 383, 106 C. C. A. 493. Those cases hold that where the defendant, in a Chinese deportation proceeding, claims to be a natural-born citizen, who has never left the United States, he is entitled to rely on his constitutional right to remain, and the burden is on the government to prove noncitizenship. A contrary doctrine is laid down in the following cases: Chin Ah Yoke v. White (C. C. A. 9) 244 F. 940, 942, 157 C. C. A. 290; Yee King v. U. S. (C. C. A. 2) 179 F. 368, 102 C. C. A. 646; U. S. v. Hom Lim (C. C. A. 2) 223 F. 520, 139 C. C. A. 68; U. S. v. Too Toy (D. C.) 185 F. 838; Ng You Nuey v. U. S. (C. C. A. 6) 224 F. 340, 343, 140 C. C. A. 26; Lee Yuen Sue v. U. S. (C. C. A. 9) 146 F. 670, 673, 77 C. C. A. 96; Lee Sim v. U. S. (C. C. A. 2) 218 F. 432, 435, 134 C. C. A. 232; Woo Vey v. U. S. (C. C. A. 6) 242 F. 838, 155 C. C. A. 426; 245 U. S. 660, 38 S. Ct. 60, 62 L. Ed. 535; Jew Lee v. U. S. (C. C. A. 2) 237 F. 1013, 151 C. C. A. 75; Lo Hop v. U. S. (C. C. A. 6) 257 F. 489, 490, 168 C. C. A. 493; Bak Kun v. U. S. (C. C. A. 6) 195 F. 53, 55, 115 C. C. A. 55; U. S. v. Hen Lee (D. C.) 236 F. 794. See, also, U. S. v. Chin Tong (C. C. A. 5) 192 F. 485, 487, 112 C. C. A. 647, decided subsequent to Gee Cue Beng v. U. S., supra.

But appellant did not claim to have been born in the United States, and to have always been a resident thereof, but admitted that he was born in China, and surreptitiously entered the United States. In the case of Chin Bak Kan v. U. S., 186 U. S. 193, 22 S. Ct. 891, 46 L. Ed. 1121, Chin Bak Kan admitted that he came into the United States other than through lawful channels. He defended upon the ground that he was a native-born citizen. The court said:

"By the law the Chinese person must be adjudged unlawfully within the United States unless he 'shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States.'"

In Chin Yow v. U. S., 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369, the Supreme Court used language which indicates that upon a trial on the merits in a habeas corpus proceeding, where the petitioner had not been

---

[1] 28 S. Ct. 201, 52 L. Ed. 369.

accorded a fair hearing before the immigration authorities, the burden would be upon the petitioner to prove his claim of American citizenship. The court said:

"The petitioner then is imprisoned for deportation without the process of law to which he is given a right. Habeas corpus is the usual remedy for unlawful imprisonment. But, on the other hand, as yet the petitioner has not established his right to enter the country. He is imprisoned only to prevent his entry, and an unconditional release would make the entry complete without the requisite proof. The courts must deal with the matter somehow, and there seems to be no way so convenient as a trial of the merits before the judge. If the petitioner proves his citizenship, a longer restraint would be illegal. If he fails, the order of deportation would remain in force."

Section 19 of the Act of February 5, 1917, 39 Stat. 889 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), among other things, provides:

"Provided further, that any person who shall be arrested under the provisions of this section, on the ground that he has entered or been found in the United States in violation of any other law thereof which imposes on such person the burden of proving his right to enter or remain, and who shall fail to establish the existence of the right claimed, shall be deported to the place specified in such other law."

And the Act of May 5, 1892, 27 Stat. 25 (Comp. St. § 4317), provides:

"Any Chinese person or person of Chinese descent arrested under the provisions of this act * * * shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

The Court of Appeals of the Second Circuit in Sit Sing Kum et al. v. U. S., 277 F. 191, held in a deportation proceeding that the two sections above quoted placed the burden of proving citizenship upon the Chinese person who resisted deportation on the ground that he was an American citizen.

The existence of American citizenship depends upon facts. When the existence of the fact is challenged by the government in a proceeding properly instituted, the placing upon the person claiming citizenship the burden to prove the existence of the fact neither destroys nor impairs the right of citizenship. It merely requires proof of facts peculiarly within the knowledge of the person upon whom such burden is placed. As said by the Circuit Court of Appeals for the Sixth Circuit, in Ng You Nuey v. U. S., 224 F. 340, 343, 140 C. C. A. 26, 29:

"Citizenship is a fact, as well as a right, and to exact proof of the fact is not an attempt to destroy the right, but is to apply a rule of evidence to ascertain the truth or not of its existence."

We hold, under the sections above referred to, that when the appellant admitted he was of Chinese descent, was born in China, and entered the United States surreptitiously, the burden of proving that he was an American citizen was upon him.

We agree with the learned trial judge that the evidence in support of the claim of citizenship did not satisfactorily establish the alleged fact, and that the Department of Labor was fully justified in refusing to accept as true the testimony offered by appellant.

[6] Finally, appellant contends that the warrant of deportation should have been for his removal to Canada, instead of China. He bases this contention upon section 13 of the Act of September 13, 1888, 25 Stat. 479, Comp. St. § 4313. This section was superseded by section 2, c. 60, of the Act of May 5, 1892, 27 Stat. 25 (Comp. St. 4316), which provides that any Chinese person adjudged not to be lawfully entitled to be or remain in the United States shall be removed from the United States to China. Ng You Nuey v. U. S. (C. C. A. 6) 224 F. 340, 344, 140 C. C. A. 26.

The order appealed from is affirmed.